COMMONWEALTH *vs.* COLLEGE PRO PAINTERS (U.S.) LTD. (and a companion case).

Norfolk. September 8, 1994. - October 7, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Federal preemption. *Occupational Safety and Health Administration. Statute*, Federal preemption. *Regulation.*

Section 18 of the Occupational Safety and Health Act, 29 U.S.C. § 667 (1988), preempts 454 Code Mass. Regs. § 11.03 (2) (b) and (3), where the Occupational Safety and Health Administration has promulgated Federal standards addressing the same safety and health issues relating to the painting industry as are articulated in the State regulations; where those regulations had not been submitted to the United States Secretary of Labor for approval pursuant to 29 U.S.C. § 667 (b), the Commonwealth was precluded from prosecuting any violations of them under the authority of G. L. c. 149, § 6. [727-731]

COMPLAINTS received and sworn to in the Brookline Division of the District Court Department on August 3, 1992.

The cases were heard by *Herbert N. Goodwin*, J., on a motion to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Benjamin G. Robbins*, Assistant Attorney General (*Douglas H. Wilkins*, Assistant Attorney General, with him) for the Commonwealth.

*John J. Barter* (*Santino Ferrante & Jennifer Nye* with him) for defendant.

NOLAN, J. The facts are not in dispute. The defendant, College Pro Painters (U.S.) Ltd., is a Maryland corporation with its principal place of business in Cambridge. The defendant markets painting franchises throughout the United States. On August 3, 1992, the Brookline Division of the Dis-

trict Court Department issued criminal complaints against the defendant. The complaints alleged that the defendant violated 454 Code Mass. Regs. § 11.03 (2) (d) and (3) (1993) for "failing to post a Massachusetts Rigging Registration Number" and "failing to have a licensed painter's rigger on the work site." On May 12, 1993, a District Court judge granted the defendant's motion to dismiss the complaints. The Commonwealth filed a notice of appeal dated May 17, 1993. We transferred the case to this court on our own motion.

The principal question before us is whether § 18 of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 667 (1988), preempts 454 Code Mass. Regs. § 11.03 (2) (b) and (3), thereby precluding prosecution under G. L. c. 149, § 6 (1992 ed.).[1] We conclude that § 11.03 (2) (b) and (3) are preempted because the Occupational Safety and Health Administration (OSHA) has promulgated Federal

---

[1]Title 29 U.S.C. § 667 (1988), provides:

"(a) Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.

"(b) Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement."

Title 454 Code Mass. Regs. § 11.03 (2) (b) (1993) provides: "The Department [of Labor and Industries] shall issue biennially to the person filing such statement a serially numbered certificate of registration nontransferrable, which shall be kept at the place where such rigging is used or stored. If the rigging registered under a single certificate is in use or stored in more than one place, a notice indicating the place and a serial number of certificates shall be kept at each other such place."

Title 454 Code Mass. Regs. § 11.03 (3) (1993), states: "On every structural painting operation in connection with which any rigging is used, there shall be at all times, at least one designated person who is qualified as a painter's rigger by having satisfactorily passed an examination prescribed by the Department, and being the holder of a rigger's certificate of license for the current period.

"(a) The said rigger's certificate shall be kept on the premises and be available at all times for an inspector of the Department who may require

standards addressing the same occupational health and safety issues as § 11.03 (2) (b) and (3). As a result, we affirm the judge's dismissal of the complaints.

The Commonwealth argues that 29 U.S.C. § 667 does not preempt 454 Code Mass. Regs. § 11.03 (2) (b) and (3) because OSHA has not promulgated any standards regarding the licensing of riggers or the posting of a rigger's license. We disagree.

Under the supremacy clause in art. 6 of the Constitution of the United States, we are obligated to declare invalid any State statute or regulation that purports to regulate a field that Congress has reserved exclusively to itself. *Commonwealth* v. *Federico*, 383 Mass. 485, 488-489 (1981). The touchstone of preemption is congressional intent. *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 208 (1985). See *Malone* v. *White Motor Corp.*, 435 U.S. 497, 504 (1978). "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 138 (1990). Congress' purpose in enacting the OSH Act was to ensure "safe and healthful working conditions" for all workers in the United States. 29 U.S.C. § 651(b) (1988). See *Gade* v. *National Solid Wastes Management Ass'n*, 112 S. Ct. 2374, 2382 (1992). In addition, Congress intended to "promote occupational safety and health while at the same time avoiding duplicative, and possibly counterproductive, regulation." *Id.* at 2385. As a result, the Supreme Court of the United States has concluded that "the OSH Act precludes any state regulation of an occupational safety or health issue with respect to which a federal standard has been established, unless a

---

said certificate to be delivered to him upon finding a violation of 454 CMR 11.00 on such structural painting operations.

"(b) The rigger's certificate delivered to an inspector shall not be returned until the person to whom it was issued has appeared at a hearing to show cause why such certificate should not be suspended or revoked.

"(c) A person qualified as a painter's rigger, as specified above, shall be either the employer or his designated person whose duty it shall be to erect or supervise the erection and maintenance of rigging used in accordance with 454 CMR 11.00."

state plan has been submitted and approved." *Id.* See 29 U.S.C. § 667(a), (b). To avoid preemption of its occupational health and safety regulations, therefore, a State must either submit its plan to the United States Secretary of Labor for approval or regulate only those areas in which OSHA has remained silent. See 29 U.S.C. § 667 (b), (c).

Although the Commonwealth has not raised the issue on this appeal, it is clear that the OSH Act governs 454 Code Mass. Regs. §§ 11.00 et seq. (1993), the structural painting safety code (code), because it creates an "occupational safety and health standard." 29 U.S.C. § 652(8). "The OSH Act defines an 'occupational safety and health standard' as 'a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment.' " *Gade v. National Solid Wastes Management Ass'n, supra* at 2386, quoting 29 U.S.C. § 652(8). The purpose of the code, meanwhile, "is to establish reasonable requirements necessary to protect the safety and health of employees and others engaged in activities connected with structural painting operations." 454 Code Mass. Regs. § 11.01 (1). As a result, the Commonwealth must comply with 29 U.S.C. § 667 to avoid the preemption of § 11.03 (2)(b) and (3). Section 667 provides that: "Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title."

The Commonwealth has conceded that it did not submit the code to the Secretary of Labor for approval. The Commonwealth contends, however, that § 11.03 (2)(b) and § 11.03 (3) are not preempted because OSHA has not promulgated any regulations addressing either the licensing of riggers or the posting of a rigger's license at a work site. We conclude, however, that several sections of Title 29 of the United States Code apply directly to painting operations and

squarely address the safety and health issues articulated in § 11.03 (2) (b) and (3).[2]

Part 1926 of Title 29 of the Code of Federal Regulations is entitled, "Safety and Health Regulations for Construction." Having defined "construction work" as "including painting and decorating," 29 C.F.R. § 1910.12 (b) (1993), OSHA has expressly imposed its regulations on the painting industry. Painters, therefore, must comply with regulations requiring employers to train their employees in matters of general safety. 29 C.F.R. §§ 1926.20, 1926.21 (1993). In addition, employers must implement a training program to educate employees regarding, inter alia, the proper utilization of both ladders and "fall protection systems." 29 C.F.R. § 1926.1060 (1993).[3] Furthermore, OSHA has prohibited the erection or dismantling of scaffolding unless a trained su-

---

[2]In addition to the specific sections set out above, OSHA has promulgated exhaustive standards relating to the use of walking-working surfaces, 29 C.F.R. §§ 1910.21-1910.28 (1993), ladders or stairways, 29 C.F.R. §§ 1926.1050-1926.1060 (1993), and scaffolds, 29 C.F.R. §§ 1926.450-1926.453 (1993).

[3]Section 1926.1060 of Title 29 of the Code of Federal Regulations provides: "The following training provisions clarify the requirements of § 1926.21(b)(2), regarding the hazards addressed in subpart x.

"(a) The employer shall provide a training program for each employee using ladders and stairways, as necessary. The program shall enable each employee to recognize hazards related to ladders and stairways, and shall train each employee in the procedures to be followed to minimize these hazards.

"(1) The employer shall ensure that each employee has been trained by a competent person in the following areas, as applicable: (i) The nature of fall hazards in the work area; (ii) The correct procedures for erecting, maintaining, and disassembling the fall protection systems to be used; (iii) The proper construction, use, placement, and care in handling of all stairways and ladders; (iv) The maximum intended load carrying capacities of ladders used; and (v) The standards contained in this subpart.

"(b) Retraining shall be provided for each employee as necessary so that the employee maintains the understanding and knowledge acquired through compliance with this section."

pervisor is present. 29 C.F.R. § 1926.451 (a)(3) (1993).[4] As a result, we hold that § 11.03 (2) (b) and § 11.03 (3) are preempted by the standards which OSHA has promulgated, thereby precluding prosecution under G. L. c. 149, § 6. Accordingly, we affirm the judge's dismissal of the complaints.

*So ordered.*

---

[4] "No scaffold shall be erected, moved, dismantled, or altered except under the supervision of competent persons." 29 C.F.R. § 1926.451 (a)(3) (1993).

A competent person is defined as "one who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them." 29 C.F.R. § 1926.32 (f) (1993).