COMMISSIONER OF REVENUE vs. THE KELLY-SPRINGFIELD
TIRE COMPANY.

Suffolk. November 7, 1994. - December 23, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Taxation*, Corporate excise, Abatement. *Statute*, Construction.

A Maryland corporation's voluntary qualification, pursuant to G. L. c. 181, § 4, to do business in the Commonwealth did not remove the otherwise applicable protection from taxation afforded it by 15 U.S.C. § 381, and G. L. c. 63, § 39, as amended by St. 1975, c. 684, § 52, where its activities in the Commonwealth consisted solely of the solicitation of sales of tires; consequently the Commissioner of Revenue lacked authority to levy an excise tax on the corporation. [266-268]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas A. Barnico*, Assistant Attorney General, for the Commissioner of Revenue.

*Raj Marphatia* for the taxpayer.

GREANEY, J. We granted an application for direct appellate review on this appeal by the Commissioner of Revenue (commissioner) from a decision of the Appellate Tax Board (board) granting an abatement to the Kelly-Springfield Tire Company (Kelly-Springfield) of the full amount of a deficiency assessed in connection with Kelly-Springfield's 1982 corporate excise tax. The board decided that, in light of the limitations on State taxing power contained in 15 U. S. C. § 381 (1988) (codifying § 101 [a] of Pub. L. 86-272 [73

Stat. 555 (1959)]),[1] the commissioner lacked authority to levy a corporate excise tax on the intrastate activities of Kelly-Springfield, which consisted of the solicitation of sales of tires, solely because Kelly-Springfield had voluntarily qualified to do business in Massachusetts. We agree with the board and affirm its decision.

The case arose as follows. Kelly-Springfield, a Maryland corporation with a principal place of business in Cumberland, Maryland, manufactures and sells automotive and other tires. Kelly-Springfield was incorporated in Maryland on July 12, 1935, and qualified to do business in Massachusetts under G. L. c. 181, § 4 (1992 ed.), on August 22, 1935.

---

[1]Title 15 U.S.C. § 381 (1988), reads, in pertinent part, as follows:

"IMPOSITION OF NET INCOME TAX

"MINIMUM STANDARDS

"(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

"(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

"DOMESTIC CORPORATIONS; PERSONS DOMICILED IN OR RESIDENTS OF A STATE

"(b) The provisions of subsection (a) of this section shall not apply to the imposition of a net income tax by any State, or political subdivision thereof, with respect to —

"(1) any corporation which is incorporated under the laws of such State; or

"(2) any individual who, under the laws of such State, is domiciled in, or a resident of, such State."

Pursuant to the requirements of § 4, Kelly-Springfield has filed annual reports with the Secretary of the Commonwealth.

Kelly-Springfield sold its tires in Massachusetts through employees known as "Field Service Representatives." During 1982, these representatives, traveling in automobiles owned or leased by Kelly-Springfield and carrying calculators and promotional literature, regularly came to Massachusetts to solicit orders for the sale of tires. During 1982, Kelly-Springfield did not own or rent an office or any other business premises in the Commonwealth; it did not employ anyone who resided in Massachusetts; all orders for tires, whether solicited by representatives in Massachusetts or placed directly by Massachusetts customers, were accepted or rejected outside Massachusetts; and the tires were shipped to Massachusetts customers by means of common carrier from warehouses located in New Jersey, Ohio, and Maryland. Sales to Massachusetts customers for 1982 totalled $7,903,237, and payments due Kelly-Springfield from these customers were made directly to a Philadelphia bank account.

Kelly-Springfield filed its 1982 Massachusetts corporation excise tax return in March, 1983. The amount of tax shown as due on the return was $228, the minimum excise under G. L. c. 63, § 39, plus a fourteen per cent surcharge. On August 9, 1985, the commissioner assessed a deficiency of $53,002.26 for tax year 1982.[2]

Kelly-Springfield paid the assessment in full and filed a timely application for an abatement which the commissioner denied. It then filed a petition with the board pursuant to the formal procedure, see G. L. c. 62C, § 39, and G. L. c. 58A,

---

[2]This sum represented additional taxes of $36,772 and interest of $16,230.26. The assessment was made under Department of Revenue Letter Ruling 1984-78 (September 17, 1984), Official Massachusetts Tax Guide - Corporate Excise at 525-526 (West 1984), which discussed the relationship between 15 U.S.C. § 381 and the Massachusetts corporate excise tax on foreign corporations, G. L. c. 63, § 39. The ruling, as far as relevant here, stated that "[t]he corporate excise tax is due and payable on . . . [a foreign corporation's] qualification to . . . do business in this state . . . ."

§ 6 (1992 ed.), challenging the denial of the abatement and seeking the return of the deficiency with interest. The board, in a written decision, ordered an abatement of the full amount of the deficiency. This appeal by the commissioner followed.

Before examining the merits, it will be useful to furnish some legal background. Congress enacted 15 U.S.C. § 381 in 1959 in response to the United States Supreme Court decision in *Northwestern States Portland Cement Co.* v. *Minnesota*, 358 U.S. 450 (1959), which called into question the previously settled view, see *Heublein, Inc.* v. *South Carolina Tax Comm'n*, 409 U.S. 275, 279-280 (1972), that a State could not tax a foreign corporation on the basis solely of solicitation of orders for the sale of its products.

In 1975, § 39 of G. L. c. 63 was amended by St. 1975, c. 684, § 52, to make qualification to do business in Massachusetts an incident of taxation,[3] and the commissioner has taken the position, consistent with the language of § 39, that qualification automatically removes a foreign corporation from the protection of § 381. The 1975 amendment to § 39 appears to have been enacted in reliance upon the United States Supreme Court decision in *Colonial Pipeline Co.* v. *Traigle*, 421 U.S. 100 (1975). In that case, the Court upheld a fairly apportioned and nondiscriminatory Louisiana corporate franchise tax imposed on the qualification to do business against challenge under the commerce clause contained in art. I, § 8 of the United States Constitution. The *Colonial Pipeline* decision, however, did not involve § 39, or a tax on corporate net income. The case dealt with a corporation franchise tax based on a corporation's capital stock, surplus, undivided profits, and borrowed capital.

In 1992, the United States Supreme Court decided *Wisconsin Dep't of Revenue* v. *William Wrigley, Jr., Co.*, 505

---

[3]Section 39 provides, in relevant part, that "every foreign corporation . . . qualified to do business [in Massachusetts] . . . shall pay . . . [a specified] excise [tax]." The statute further provides that "[t]he excise levied herein is due and payable on . . . [t]he qualification to . . . do business in this state . . . ."

U.S. 214 (1992), which clarified the phrase "solicitation of orders" contained in 15 U.S.C. § 381. In the *Wrigley* decision, the Court held that § 381 does not automatically authorize State taxation of a company engaged in limited in-State business activities that are not ancillary to the "solicitation of orders." If such in-State activities are de minimis, that is, if they establish only a trivial connection with the taxing State, § 381 continues to provide net corporate income tax immunity. *Id.* at 231-232.

In 1990, by St. 1990, § 383, the Legislature added a paragraph to § 39 of G. L. c. 63, to take into account the effect of Federal law on the State power to levy a corporate excise tax. Insofar as relevant here, the final paragraph of § 39 provides that "[a] foreign corporation shall not be subject to tax under this chapter if the foreign corporation is engaged in the business of selling tangible personal property and taxation of that foreign corporation under this chapter is precluded by the Constitution or laws of the United States . . . ." See also 830 Code Mass. Regs. § 63.39.1(5)(a) (1988).

With this legal background in mind, the commissioner and Kelly-Springfield stipulated before the board that "during the year in question only [1982], the activities of [Kelly-Springfield's] Field Service Representatives in the Commonwealth either (a) constituted sales or 'solicitation' within the meaning of [§ 381]; or (b) were de minimis or entirely ancillary to such sales or solicitation." The stipulation removed any controversy over whether the activities met the "solicitation of orders" test in § 381, as clarified by the de minimis standard provided for in the *Wrigley* decision, and posed, as the sole question in the case, whether Kelly-Springfield's voluntary qualification to do business in Massachusetts removed the otherwise applicable tax protection afforded by § 381. No Massachusetts decision has resolved this issue.

The commissioner seeks an affirmative answer to the question. The commissioner points out that, since a State cannot require a foreign corporation to qualify to do business, if the corporation's activities are limited solely to interstate busi-

ness, Kelly-Springfield's decision to so qualify is voluntary. See *Goodwin Bros. Leasing* v. *Nousis*, 373 Mass. 169, 174 (1977). Section 381, the commissioner notes, protects only solicitation of orders for the sales of tangible personal property. Qualifying to do business, the commissioner argues, constitutes a separate and significant business practice which creates a closer relationship to the Commonwealth and provides important benefits under State law.[4] Thus, the commissioner maintains, qualification to do business is not ancillary to the solicitation of orders (namely, it serves independent business functions apart from such solicitation), and qualification is not de minimis (namely, it establishes a nontrivial additional connection with the Commonwealth). The commissioner concludes that, in 1982, Kelly-Springfield was engaged in business activities other than the solicitation of orders which deny it the protection of § 381.

The difficulty with the commissioner's position is the unambiguous language of § 381, which is the principal source of insight into Congressional purpose, and is to be applied as written. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). Section 381 sets forth two requirements for a person to be entitled to its protection. First, the person's business activities in the taxing State must be either limited to the solicitation of orders for sales of tangible personal property or de minimis or ancillary to such solicitation. It is stipulated that Kelly-Springfield's activities, soliciting orders for sales of tires in 1982, met this standard. Second, the corporate entity may not be incorporated under the laws of the taxing State. Kelly-Springfield is not incorporated in Massachusetts. If Congress had intended to exclude foreign corporations which had only qualified to do business in the taxing State from the protection of § 381, it would have inserted language to that effect into the law. The absence of such language is dispositive because a court cannot change the plain

---

[4]The commissioner refers to such benefits as the right to maintain litigation, the right to convey land, the right to limit individual liability under principles of corporate law, the right to protect the corporate name, and the right to appoint a resident agent for service of process.

meaning of § 381 to add a new basis for disqualification from its protection. Every taxing jurisdiction that has considered the issue has come to the same conclusion. See *Kelly-Springfield Tire Co.* v. *Bajorski*, 228 Conn. 137, 146-147 (1993); *Scott & Williams* v. *Board of Taxation*, 117 N.H. 189 (1977); Letter to Commerce Clearing House [1986-1990 Transfer Binder], St. Tax Rep. (CCH) par. 401-647 (Cal. Franchise Tax Bd. Aug. 15, 1988); *In re Allied Thermal Corp.*, [1980-1983 Transfer Binder] St. Tax Rep. (CCH) par. 250-749 (N.Y. Tax Comm'n Feb. 1, 1983); Priv. Letter Rul. 88-19 [1977-1992 Transfer Binder], St. Tax Rep. (CCH) par. 200-284 (S.C. Tax Comm'n Sept. 21, 1988); Va. Rev. Rul. 91-257 (Dep't of Taxation October 8, 1991); *Kelvinator Commercial Prods., Inc.* v. *Department of Revenue* [1979-1982 Transfer Binder], St. Tax Rep. (CCH) par. 201-818 (Wis. Tax App. Comm'n March 10, 1981); 1 J.R. Hellerstein, State Taxation § 6.10, at 239-240 n.103 (1983). See also Report of the Special Subcommittee on State Taxation of Interstate Commerce, H.R. Rep. No. 1480, 88th Cong., 2d Sess., at 427 (1964) ("the fact that a company is qualified to do business in a State has not been treated as negating the protection given by . . . [§ 381]").

The board's decision is affirmed.

*So ordered.*