Roseman, J.
Plaintiff National Private Truck Council (“NPTC’j, a national trade association whose members operate truck fleets, brings this action challenging a regulation promulgated by the Massachusetts Commissioner of Revenue (“DOR”). NPTC alleges that 830 Code Mass. Regs. 63.39.1(5) (1993) (“the regulation”), which applies Massachusetts corporate net income tax to certain foreign corporations using Massachusetts roadways to transact business, violates 15 U.S.C. §381, commonly referred to as Public Law 86-272 (“P.L. 86-272”).[1]
For the following reasons, this court will enter a declaratory judgment to the effect that 830 Code Mass. Regs. 63.39.1(5) (1993) is preempted by P.L. 86-272.
BACKGROUND
This matter is before the court on a joint statement of agreed facts, incorporated herein by reference.[2] Thus, the record before the court presents a “case stated.” Hickey v. Green, 14 Mass.App.Ct. 671, 671 n.2 (1982), rev. denied, 388 Mass. 1102 (1983), quoting Quinton Vespa v. Construction Service Co., 343 Mass. 547, 551-52 (1962). A case stated is an agreement by the parties of all pertinent facts, from which the court may draw inferences. Reilly v. Local 589, Amalgamated Transit Union, 22 Mass.App.Ct. 558, 568, rev. denied, 398 Mass. 1105 (1986). On the basis of these material facts, it is the duty of the court to order the correct judgment of the parties’ rights as a matter of law. Quinton Vespa, 343 Mass. at 552; Saphier v. Devonshire Street Fund, Inc., 352 Mass. 683, 685 (1967).
The issue of law before this court is whether 830 CodeMass. Regs. 63.39.1(5), as construed and applied here by the Commonwealth, is preempted by P.L. 86-272.
CONCLUSIONS OF LAW
The regulation was promulgated under the authority ofG.L.c. 63, §39 (1990), which provides in pertinent part:
Except as otherwise provided herein, every foreign corporation . .. actually doing business in the commonwealth, or owning or using any part or all of its capital, plant or any other property in the commonwealth, shall pay [excise tax]... A foreign corporation shall not be subject to tax under this chapter if the foreign corporation is engaged in the business of selling tangible personal property and taxation of that foreign corporation under this chapter is precluded by the Constitution or laws of the United States.
The regulation “describes the circumstances under which a foreign corporation is subject to the tax jurisdiction of Massachusetts under M.G.L.c. 63, §39.” 830 Code Mass. Regs. 63.39.1(l)(a) (1993). The regulation expressly recognizes that the Commonwealth’s tax jurisdiction is limited by federal laws, including P.L. 86-272. Under 830 Code Mass. Regs. 63.39.1(5), foreign corporations are immune from Massachusetts’ income tax if they fall within P.L. 86-272’s ambit. In relevant part, 830 CodeMass. Regs. 63.39.1 (5)(a) states:
A foreign corporation whose activities fall within those described in G.L.c. 63 §39 and 830 C.M.R. 63.39.1(4) [listing those activities that subject a corporation to taxation] nevertheless is not subject to Massachusetts taxation if Massachusetts is precluded from exercising its jurisdiction by P.L. 86-272 . . . P.L. 86-272 currently precludes the imposition of the excise under M.G.L.c. 63 §39, upon a foreign corporation if the sole activity of the corporation in Massachusetts is the solicitation by *351 the corporation’s representatives (in the name of the corporation or in the name of a prospective customer) of orders for the sale of tangible personal property, provided that the orders are sent outside Massachusetts for approval or rejection, and provided that the orders are filled by shipment or delivery by common carrier or contract carrier from a point outside of Massachusetts.
The regulation goes on to define which activities constitute solicitation for the purposes of the Commonwealth’s tax jurisdiction, tracking the language of Wisconsin Dept. of Revenue v. William Wrigley, Jr., Co., 505 U.S. 214 (1992). In that case, the United States Supreme Court defined what constituted “solicitation” for purposes of P.L. 86-272.[3]
P.L. 86-272 itself provides in pertinent part that:
No State . . . shall have the power to impose ... a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person . . . are either, or both, of the following:
(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State.
(2) the solicitation of orders by such person, or his representative, in such state in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).
P.L. 86-272 is not a grant of authority for a state to tax, but rather provides interstate businesses with immunity from state income tax. Richard L. Hirshberg & Alan Nediy, A Federal Concept of Doing Business, 46Va.L.Rev. 1241, 1242 (1960). The DOR recognizes that P.L. 86-272 prohibits a state from imposing an income tax if the corporation’s “sole business activities in the state consist of‘solicitation of orders’ for tangible goods, provided that the orders are sent outside the state for approval and the goods are shipped or delivered from out of state.” DOR Directive 95-7 /2 (emphasis added).
The parties’ disagreement centers around the meaning of “deliveiy” in the following circumstance: a company wishing to ship or deliver goods into Massachusetts may do so either by common carriage, contract carriage, or private truck. Statement/2. Currently, there is virtually no operating distinction between common carriers and contract carriers. Statement/2. DOR contends that, for the corporation to fall under P.L. 86-272’s immunity, delivery must occur outside Massachusetts via a common carrier. In that event, DOR argues, title to the goods passes to the buyer on assumption of possession by the common carrier, a circumstance that occurs outside Massachusetts and results in statutory immunity. NPTC, on the other hand, contends that “delivery” embraces the circumstance when its members’ private trucks deliver the solicited goods. In NPTC’s view, foreign corporations who deliver goods into Massachusetts from a point outside the Commonwealth using a private truck are immune from taxation under P.L. 86-272.
A. Preemption Analysis
At the outset, this Court notes that as a general rule “preemption is not favored, and state laws should be upheld unless a conflict with federal law is clear . . . The burden is on the party seeking to displace the state action to show preemption with hard evidence of conflict based on the record.” Sawash v. Suburban Welders Supply Co., 407 Mass. 311, 315 (1990). The conflict must be actual, not based on mere “unsupported pronouncements as to federal policy." Attorney General v. Brown, 400 Mass. 826, 829 (1987).
In addition, federal preemption is less likely to be found in areas of local, rather than national, concern. Brown, 400 Mass. at 829. Such is not the case here. P.L. 86-272 and the regulation at issue both address taxation of interstate commerce. While taxation is a joint state and federal concern, the statutes and regulation here impact interstate commerce. Thus, the issues revolve less around local concerns than national ones, and in such an event, preemption is favored. See, id.
Under the Supremacy Clause of Article VI of the Constitution, state courts are “obligated to declare invalid any State statute or regulation” that is preempted by federal law. Commonwealth v. College Pro Painters (U.S.) Ltd., 418 Mass. 726, 728 (1994). Thus, state law that conflicts with federal law is preempted and is “without effect.” Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992).
Preemption analysis arises in three situations. First, a state law will be preempted if, in the text of the federal legislation itself, Congress has explicitly provided that all state laws to the contrary are preempted. Sawash, 407 Mass. at 314; E.E.O.C. v. Commonwealth of Mass., 987 F.2d 64, 67 (1st Cir. 1993). That is not the case here. P.L. 86-272 contains no statement of preemption. Rather, the text of the legislation recognizes that states may determine when an income tax will be imposed. It does not specifically preempt the enactment of such state laws.
In the absence of an express statement, preemption may be implied when, based on the totality of the circumstances, Congress has “occupied the field,” creating a pervasive and comprehensive scheme of regulation which leaves no room for state legislation. Brown, 400 Mass. at 828; Sawash, 407 Mass. at 314; Arthur D. Little, Inc. v. Comm'r of Health and Hospitals *352 of Cambridge, 395 Mass. 535, 548 (1985); Building and Construction Trades Council of the Metro. Dist. v. Assoc. Builders and Contractors of Mass./Rhode Island, Inc., 507 U.S. 218, 224 (1993); Tart v. Comrnonwealth of Mass., 949 F.2d 490, 500 (1st Cir. 1990). P.L. 86-272 is inconsistent with an exclusive federal scheme, however, in that it “envisions state participation” in the taxation of foreign corporations by expressly acknowledging state legislation. See, MacInnes v. Comm’r of Public Welfare, 412 Mass. 790, 796 (1992).
Third, “if Congress has not displaced state regulation entirely, it may nonetheless preempt state law to the extent that it actually conflicts with the federal law.” Sawash, 407 Mass. 311; Brown, 400 Mass. at 829; Tart, 949 F.2d at 500. Actual conflicts arise when “compliance with both state and federal law is impossible or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Sawash, 407 Mass. at 314; Brown, 400 Mass. at 829.
Here, compliance with both statutes is not physically impossible. Some NPTC members use common carriers to ship or deliver goods into Massachusetts. Statement/5. By doing so, the corporation will be immune from taxation under the regulation; thus, it is possible for a corporation to comply with both the federal and state laws in such a way as to avoid taxation.
However, in this court’s view, the regulation here does “stand as an obstacle to the purposes and objectives of the federal legislation.” To determine what the Congressional purposes and objectives of P.L. 86-272 were, Congressional intent is the cornerstone. Cipollone, 504 U.S. at 516; College Pro, 418 Mass. at 728. See also, Sawash, 407 Mass. at 317.
B. Congressional Intent
To determine Congressional purpose and intent, the court must “examine the explicit statutory language and the structure and purpose of the statute.” College Pro, 418 Mass. at 728. P.L. 86-272. “[T]he unambiguous language of [P.L. 86-272] ... is the principal source of insight into congressional purpose, and is to be applied as written.” Comm’r of Revenue v. Kelly-Springfield Tire Co., 419 Mass. 262, 267 (1994).
P.L. 86-272 was enacted in response to a series of Supreme Court decisions allowing states to levy income tax on foreign corporations. See, id. at 265; Heublein, Inc. v. South Carolina Tax Comm’n, 409 U.S. 275, 279 (1972). In 1959, the Supreme Court held that the net income from a corporation transacting interstate business was taxable by states under a nondiscriminatory, fairly apportioned levy. Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450 (1959). The Court subsequently denied certiori in two Louisiana cases, in which the lower courts upheld Louisiana’s tax on the income foreign corporations made on interstate business.[4]
The business community reacted strongly to the impact these decisions would have, particularly on small businesses transacting commerce across state lines. 105 Cong. Rec. 16,359 (1959), quoted in Timothy J. Sweeney, State Taxation of Interstate Commerce Under Public Law 86-272: “A Riddle Wrapped in an Enigma Inside a Mystery,” 1984 B.Y.U.L.Rev. 169,173 n.25-26, 182 (1984); Paul J. Hartman, “Solicitation” and “Delivery” Under Public Law 86-272: An Uncharted Course, 29 Vand.L.Rev. 353, 357 (1976). There was concern that as a result of soliciting orders within a state, out-of-state corporations would be exposed to income tax liability. Sweeney, 1984 B.Y.U.L.Rev. at 172; Heublein, 409 U.S. at 280.
As a result, P.L. 86-272 was enacted, purportedly as a temporary stop-gap to maintain the status quo pending further study. Id. at 281; Sweeney, 1984 B.Y.U.L.Rev. at 181-182; Hartman, 29 Vand.L.Rev. at 362. P.L. 86-272 “substantially limited the power of the states to tax income from interstate commerce.” Hirshberg & Nediy, 46 Va.L.Rev. at 1241. It was designed to “define clearly a lower limit for the exercise” of a state’s power to tax the local activities of foreign corporations, Heublein, 409 U.S. at 280, 281 n.7, by defining what “minimum activities would not be subject to state taxation.” Sweeney, 1984 B.Y.U.L.Rev. at 180.
Thus, P.L. 86-272 was intended as a provision for “tax immunity" for businesses engaged solely in certain activities, rather than a grant of authority under which a state may levy a tax. Hirshberg & Nedry, 46 Va.L.Rev. at 1242 n. 12.
The general effect of Public Law 86-272 is to provide guidelines, established by Congress, as to what constitutes ‘doing business’ within a state for the purpose of determining that state’s power to impose a net income tax on income derived from interstate commerce. . . . [Public Law 86-272] specifies certain minimum activities which can be carried on within a state by a person engaged exclusively in interstate commerce with the assurance that none of his income can be taxed by such state or political subdivision.
Id. at 1242. From this, it is discerned that the congressional intent and purpose behind P.L. 86-272 “was to remove from the ambit of harassment those businesses having few, if any, real roots in the importing or market state.” Id. at 1255.
C. Taxation of Private Truck Deliveries in Other Jurisdictions
Other states also levy income tax on foreign corporations immune from taxation under P.L. 86-272 but for their use of private trucks to deliver the solicited goods. The results have varied, even within the same state. In 1992, Florida found that a corporation whose only activities within the state were solicitation of orders filled by shipment or delivery from a point outside the state by private trucks was exempt from *353 corporate income tax. Fla. Tech. Assistance Advisement No. 92(M)-008 (October 15, 1992), Pl.’s Memo, in Supp. Summ. J. at Appendix C. Three years later, however, Florida treated the shipment and delivery of goods by company-owned vehicles as unprotected, taxable activity. Fla. Tech. Assistance Advisement No. 95(c) 1-004 (March 17, 1995), attached to Def.’s letter to court of June 14, 1995.
In 1992, the Virginia Department of Taxation revoked its prior policy, and began taxing corporations who delivered goods into Virginia using private trucks. Corporation Income Tax — Ruling Req. PD 92-230 (November 9, 1992), attached to Def.’s Memo, in Opp’n Pl.’s Summ. J. at 12 n.3. The Virginia Circuit Court, however, overturned this policy, holding that the Virginia regulation violated P.L. 86-272: “the clear and plain meaning of 15 U.S.C. §381 is that States may not impose a net income tax on out-of-state corporations whose only contact with the taxing state consists of soliciting orders for goods and delivering the goods into the State in the corporations’ own vehicles.” Order, Alexandria Circuit Court, dated December 18, 1995, exhibit to Pl.’s Memo, in Supp. of Mo. to File Supplemental Authority.
New York found that delivery using private vehicles was protected under P.L. 86-272. Advisory Op. TSB-A-84(l 1)C (September 14, 1984), Pl.’s Memo, in Supp. Summ. J. at Appendix A. New Jersey tax authorities also have decided that a manufacturer or wholesaler who merely delivers their own goods into the state in their own trucks is protected under P.L. 86-272. New Jersey State Tax News, Spring 1996, attached to Pl.’s Memo, in Supp. of Second Mo. to File Supplemental Authority in Supp. of Pl.’s Summ. J.
D. Definition of “Delivery”
The term “delivery” is not expressly defined in P.L. 86-272, and the lack of federal or state caselaw interpreting the term leaves this court without a clear statutory directive regarding whether delivery of goods into Massachusetts by private truck is immune from taxation under P.L. 86-272. The legislative history indicates that the congressional committee evaluating P.L. 86-272 believed that delivery of goods in a company-owned vehicle was protected from taxation. See, Fla. Tech. Assistance Advisement No. 92(M)-008 (October 15, 1992), supra., citing the Willis Committee Report.
DOR interprets “delivery,” in conjunction with the U.C.C, to mean that title passes outside the Commonwealth through the use of a common carrier. Thus, DOR argues, if a foreign corporation delivers goods into Massachusetts in its own trucks, title passes inside Massachusetts, and P.L. 86-272 does not protect the corporation from Massachusetts’ income tax.
However, “delivery” also may be defined as the “act of putting property into the legal possession of another,” Webster’s Unabridged New International Dictionary 597 (3d ed. 1967), regardless of where that transaction occurs. Black’s Law Dictionary defines “delivery” as “the act by which the res or substance thereof is placed within the actual or constructive possession or control of another.” Black’s Law Dictionary 428 (6th ed. 1990).
A general rule of statutory construction is that “where the language of the statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." Comm’r of Revenue v. AMIWoodbroke, Inc., 418 Mass. 92, 94 (1994). A court should not construe a statute in such a way that produces an absurd or unreasonable result when a sensible construction otherwise is readily available. Manning v. Boston Redevelopment Auth., 400 Mass. 444, 453 (1987).
A reasonable, sensible construction of the term “delivery” in the context of P.L. 86-272 would thus not limit it solely to deliveries occurring out-of-state. P.L. 86-272 is clear on its face. Under its explicit language, Massachusetts may not tax a corporation whose only business activity within the Commonwealth consists of soliciting orders for tangible goods, provided that “the orders are sent outside the State for approval and the goods are delivered from out-of-state." Wrigley, 505 U.S. at 215. As long as the solicited goods are shipped or delivered from a point outside the state, the corporation is immune from income tax based on that transaction. Hartman, Vand. L. Rev. at 360-361. If Congress had intended to define “delivery” to include only those transfers of title occurring, outside the taxing state, it would have inserted language to that effect. See, Kelly-Springfield, 419 Mass. at 267.
DOR also argues that delivery in private vehicles creates a separate and significant service in Massachusetts, creating a business presence within the Commonwealth and subjecting the corporation to Massachusetts’ income tax. The court is unpersuaded. The deliveries at issue are directly connected to the solicitation activities protected under P.L. 86-272.
DOR also contends that P.L. 86-272 is unconstitutional because it impairs the sovereign power of Massachusetts to tax commerce within their borders. This contention-is without merit. The constitutionality of P.L. 86-272 was upheld in International Shoe Co. v. Corcreham, 164 So.2d. 314 (La.), cert. denied, 379 U.S. 902 (1964). Furthermore, P.L. 86-272 only provides immunity from net income taxes. It does not prevent Massachusetts from taxing foreign corporations based on unprotected activities, such as an out-of-state corporation maintaining an office or place of business within the Commonwealth, or engaging in activities beyond the scope of P.L. 86-272.
E. Conclusion
The regulation imposes income taxes on corporations who have made a business decision to conduct *354 transactions across interstate lines using private trucks, instead of common carriers, to deliver their goods into Massachusetts. Approximately 45% of corporations using private trucks are engaged in manufacturing. Private Fleet Profile/15. These corporations may have decided to use private trucks, for example, because the use of a private truck may be more appropriate for short hauls of heavy goods, or longer hauls of lighter goods. Private Fleet Profile/15.
Congress enacted P.L. 86-272 to protect corporations from being taxed by a state when its only contact with that state was solicitation of goods, and shipment or delivery of those goods from a point outside the taxing state. NPTC has met its burden of proof by demonstrating that the regulation places tax liability on a foreign corporation which would otherwise be immune under P.L. 86-272. This exercise of the Commonwealth’s tax jurisdiction conflicts with the purpose and policies behind the enactment of P.L. 86-272.
ORDER
For the foregoing reasons, it is hereby ORDERED that a declaration shall enter DECLARING that:
Regulation 830 Code Mass. Regs. 63.39.1(5) (1993) violates 15 U.S.C. §381 (P.L. 86-272) by reducing the scope of tax immunity the federal statute affords to foreign corporations whose only contact with Massachusetts consists of soliciting orders for tangible personal property, and delivering such property into the Commonwealth from a point outside Massachusetts in the corporation’s private vehicles.
Judgment to enter accordingly.

 Since this court finds that the regulation is preempted by federal law, the court will not reach plaintiffs other claims regarding the regulation.

 Nhe statement contains three separate documents which will be referred to as follows: “[Document name]/[page number].”

 Nhe Wrigley case did not address what constitutes “delivery,” specifically the facilities employed for delivery, for purposes of tax immunity under P.L. 86-272.

 Brown-Forman Distillers Corp. v. Collector of Revenue, 101 So.2d 70 (La. 1958), cert. denied, 359 U.S. 28 (1959); and International Shoe Co. v. Fontenot, 107 So.2d 640 (La. 1958), cert. denied, 359 U.S. 984 (1959).