NATIONAL PRIVATE TRUCK COUNCIL, INC. *vs.* COMMISSIONER
OF REVENUE.

Suffolk. September 5, 1997. - December 22, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Regulation. Taxation,* Income tax, Excise. *Constitutional Law,* Taxation,
Federal preemption, Interstate commerce, Commerce clause. *Interstate
Commerce.*

Public Law 86-272, codified at 15 U.S.C. § 381 (1994), affording tax im-
munity to foreign corporations whose only contact with Massachusetts
consists of soliciting orders for tangible personal property and delivering
such property into the Commonwealth from a point outside Massachusetts,
preempts the provisions of 830 Code Mass. Regs. § 63.39.1(5) (1993), as
interpreted and imposed by the Commissioner of Revenue to exempt from
taxation corporations using common or contract carriers for such ship-
ments or deliveries but to subject to taxation corporations using private
carriers, inasmuch as § 381 makes no such distinction and there was a
clear and manifest congressional intent to preempt such State regulations.
[328-329]                                    ·
Section 381 of 15 U.S.C. (1994), prohibiting States from imposing taxes that
interfere with interstate commerce is within Congress's authority under the
commerce clause and does not implicate the Tenth Amendment to the
Constitution of the United States. [329-331]

CIVIL ACTION commenced in the Superior Court Department on
September 30, 1993.

The case was heard by *David M. Roseman,* J., on a statement
of agreed facts.

The Supreme Judicial Court granted an application for direct
appellate review.

*Thomas A. Barnico,* Assistant Attorney General, for the Com-
missioner of Revenue.

*Richard P. Schweitzer,* of the District of Columbia (*Wesley S.
Chused* with him) for National Private Truck Council, Inc.

ABRAMS, J. At issue is the question whether 830 Code Mass.
Regs. § 63.39.1(5) (1993) (regulation) violates Federal statute,
Pub. L. 86-272, codified at 15 U.S.C. § 381 (1994), and

whether, as the Commissioner of Revenue (commissioner) argues, § 381 is unconstitutional as it unduly impairs the sovereign power of the State to tax interstate commerce within its borders and thus violates the United States Constitution's Tenth Amendment reservation of power to the States. The plaintiff filed a complaint in the Superior Court seeking a declaration that the Federal statute preempts the regulation and that Congress was within its power in enacting § 381. The parties filed a statement of agreed facts and cross motions for summary judgment. A judge in the Superior Court entered a declaration that the regulation "violates 15 U.S.C. § 381 ([Pub. L.] 86-272) by reducing the scope of tax immunity the [F]ederal statute affords to foreign corporations whose only contact with Massachusetts consists of soliciting orders for tangible personal property, and delivering such property into the Commonwealth from a point outside Massachusetts in the corporation's private vehicles; [t]hat 830 Code Mass. Regs. [§ ] 63.39.1(5) (1993) as applied to such foreign corporations is hereby declared to be preempted by 15 U.S.C. § 381 ([Pub. L.] 86-272); and [t]hat 15 U.S.C. § 381 ([Pub. L.] 86-272) is constitutional." The commissioner appealed. We granted the plaintiff's application for direct appellate review. We agree with the declaration entered by the Superior Court judge. We affirm.

We set forth the agreed facts. The plaintiff is the national trade association of more than 1,000 corporations that operate their own truck fleets to transport and deliver their products. Some of the plaintiff's members own their own trucks. Other members lease the trucks used for delivery from a subsidiary corporation, or from another carrier. A number of the plaintiff's members, not incorporated or based in Massachusetts, regularly solicit sales of tangible goods in Massachusetts. These orders are sent outside the Commonwealth for approval, and once approved, are filled from a point outside Massachusetts. The plaintiff's members then use their own trucks to make deliveries to their customers in Massachusetts.[1]

Section 381 expressly restricts the authority of a State to

[1]This type of transportation arrangement, where a company transports its goods in vehicles owned or leased by it, is known as "private carriage." "Common carriage" or "contract carriage," by contrast, is for-hire transportation in which the shipper and the carrier are different entities. The parties have stipulated that, for the purposes of this case, there is no difference between "common" and "contract" carriers and we refer to both simply as "common carriers."

impose an income tax on foreign corporations whose business within the State consists solely of "the solicitation of orders . . . for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State."[2]

The regulation, promulgated by the commissioner on January 1, 1990, pursuant to his authority under G. L. c. 62C, § 3, governs the question whether a foreign corporation is subject to the Massachusetts excise tax under G. L. c. 63, § 39 (1990 ed.).[3] The regulation includes, among other things, a section entitled, "Exception for Solicitation Activities Protected by [§ 381]." This exception states that a foreign corporation whose activities fall within the scope of the Massachusetts statute and regulation "nevertheless is not subject to Massachusetts taxation if Massachusetts is precluded from exercising its jurisdic-

[2]The relevant portions of 15 U.S.C. § 381 (1984) provide: "(a) . . . No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for authorization or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

"(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

"(b) . . . The provisions of subsection (a) of this section shall not apply to the imposition of a net income tax by any State, or political subdivision thereof, with respect to —

"(1) any corporation which is incorporated under the laws of such State; or

"(2) any individual who, under the laws of such State, is domiciled in, or a resident of, such State."

[3]General Laws c. 63, § 39, provides in part: "Except as otherwise provided herein, every foreign corporation . . . actually doing business in the commonwealth, or owning or using any part or all of its capital, plant or any other property in the commonwealth, shall pay [excise tax]. . . .

"A foreign corporation shall not be subject to tax under this chapter if the foreign corporation is engaged in the business of selling tangible personal property and taxation of that foreign corporation under this chapter is precluded by the Constitution or laws of the United States . . . ."

tion by [§ 381]." The regulation interprets § 381 as not impos-
ing the Massachusetts excise on a foreign corporation:

> "if the sole activity of the corporation in Massachusetts is
> the solicitation by the corporation's representatives (in the
> name of the corporation or in the name of a prospective
> customer) of orders for the sale of tangible personal
> property, provided that the orders are sent outside Mas-
> sachusetts for approval or rejection, and provided that the
> orders are filled by shipment or delivery by common car-
> rier or contract carrier from a point outside of Mas-
> sachusetts."[4]

The parties agree that the regulation exempts from State taxa-
tion entities that solicit in Massachusetts orders approved and
filled from a point outside out of the State who use common
carriers to fill their orders in State. The Commissioner, however,
claims that § 381 does not exempt similarly situated entities
who use their own vehicles to bring their goods into Mas-
sachusetts. The plaintiff contends that § 381 preempts the
regulation.

Generally preemption is not favored. *Sawash* v. *Suburban
Welders Supply Co.*, 407 Mass. 311, 315 (1990). Because § 381
impinges on the States' sovereign powers of taxation, "unless

---

[4]Title 830 Code Mass. Regs. § 63.39.1(5)(a) provides, in pertinent part: "A
foreign corporation whose activities fall within those described in G.L. c. 63,
[§ ] 39 and 830 [Code Mass. Regs. § ] 63.39.1(4) [listing those things that
subject a corporation to taxation] nevertheless is not subject to Massachusetts
taxation if Massachusetts is precluded from exercising its jurisdiction by [Pub.
L.] 86-272 . . . . [Pub. L.] 86-272 currently precludes the imposition of the
excise under [G.L.] c. 63, [§ ] 39, upon a foreign corporation if the sole activ-
ity of the corporation in Massachusetts is the solicitation by the corporation's
representatives (in the name of the corporation or in the name of a prospective
customer) of orders for the sale of tangible personal property, provided that
the orders are sent outside Massachusetts for approval or rejection, and
provided that the orders are filled by shipment or delivery by common carrier
or contract carrier from a point outside of Massachusetts."

The regulation also provides the following example of a foreign corporation
subject to tax: "Humble Homes is a foreign corporation that sells furniture.
The company regularly delivers furniture that it had sold to locations in Mas-
sachusetts using its own delivery trucks. The delivery trucks are corporate
property that the company owns or uses in Massachusetts in a corporate
capacity within the meaning of 830 Code Mass. Regs. 63.39.1(4)(d). The
delivery of goods does not constitute 'solicitation' of orders. Humble Homes
is therefore subject to the excise under G. L. c. 63, § 39." 830 Code Mass.
Regs. § 63.39.1(10), example 8.

Congress conveys its purpose clearly, it will not be deemed to have significantly changed the Federal-State balance." *Heublein, Inc.* v. *South Carolina Tax Comm'n*, 409 U.S. 275, 281-282 (1972), quoting *United States* v. *Bass*, 404 U.S. 336, 349 (1971); *English* v. *General Elec. Co.*, 496 U.S. 72, 79 (1990) ("state law is pre-empted to the extent that it actually conflicts with federal law"). Here Congress has made its purpose clear. "Section 381 was designed to define clearly a lower limit for the exercise of [State taxing] power. . . . By establishing such a limit, Congress did, of course, implicitly determine that the State's interest in taxing business activities below that limit was weaker than the national interest in promoting an open economy." *Heublein, supra* at 280.

The commissioner urges us to interpret the phrase, "filled by shipment or delivery from a point outside the state" and, in particular, to construe the word "delivery" as referring to a transaction in which title passes from shipper to customer at a point outside of the State.[5] The commissioner points to provisions of the Uniform Commercial Code enacted prior to § 381 in support of his contention that Congress intended to protect only out-of-State transactions from taxation. The commissioner contends that his interpretation should prevail because § 381 includes areas that " 'traditionally [have been] occupied by the States' [and in those circumstances] congressional intent to supersede state laws must be 'clear and manifest.' " *English, supra* at 79, quoting *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). The commissioner concludes that the congressional intent to supersede State tax law by enacting § 381 is not "clear and manifest." The Superior Court judge rejected the commissioner's argument, concluding that there was congressional intent to preempt the regulation, and that the term "delivery"[6] in the context of § 381 is not limited to out-of-State deliveries.

Neither the language of the statute nor its legislative history

---

[5]The parties agree that "shipment" refers to sending goods by mail or common carrier.

[6]We note that the dictionary definitions of the word "delivery" favor the plaintiff. Delivery is "the act of putting property into the legal possession of another." Webster's Third New Int'l Dictionary 597 (1993). Black's Law Dictionary defines delivery as the "act by which the res or substance thereof is placed within the actual or constructive possession or control of another." Black's Law Dictionary 428 (6th ed. 1990). Neither of these definitions includes the meaning suggested by the commissioner.

suggests that Congress intended the specialized meaning the commissioner urges.[7] The statute refers to shipment or delivery "from" a point outside the State, not "at" a point outside the State. The language requires only that the goods originate from out-of-State, not that the transfer of goods to the buyer occurs outside the taxing State. See 1 J. & W. Hellerstein, State Taxation at 6-32 (2d ed. 1993).

Further, the statute describes "shipment or delivery from a point outside the State" as part of the protected business activity that may take place "within the [taxing] State." § 381. As the plaintiff argues, this makes sense only if "shipment or delivery" is read to mean transportation of goods that originate outside the taxing State and then enter the State.

Other States have reached the same conclusion we do. In construing § 381, the Supreme Court of Virginia stated that "[i]n enacting § 381, Congress did not identify any manner of delivery necessary to qualify for immunity. Section 381 does not specify common carrier, contract or private carrier, or any other particular method of delivery." *Virginia Dep't of Taxation v. National Private Truck Council, Inc.*, 253 Va. 74, 77 (1997). The tax authorities in New Jersey and New York have also opined that private carriage is protected by § 381. See New Jersey State Tax News at 4 (Spring 1996); New York Advisory Op. TSB-A-84 (11)C (Sept. 14, 1984). But see Florida Tech. Assistance Advisement No. 95(c)1-004 (Mar. 17, 1995) (advising that private carriage is not protected by § 381).

The commissioner also argues the regulation should be upheld because § 381 is unconstitutional. The commissioner contends that § 381 unduly impairs the sovereign power of the State to

---

[7]Legislative history supports our interpretation. "[I]f the only business presence within the State by a [company] engaged in interstate commerce is the solicitation . . . of orders for sales of tangible personal property and the orders are sent to an office out of state for approval or rejection, and if the order is approved, it is filled by shipment or delivery from a stock of goods, warehouse, plant, or factory located out of the State, the net income tax of the State . . . on income derived within the State by such [company] from interstate commerce may not be imposed." S. Rep. No. 658, 86th Cong., 1st Sess., pt. 6, at 2553 (1959) (Committee on Finance).

Moreover, there are indications that Congress in fact sought to avoid exposing corporations to taxation based on the sort of distinction the commissioner is trying to make. *Id.* at 2550 (noting that disparate State definitions of point of sale exposes corporations to uncertain and multiple State tax liabilities to the potential detriment of interstate commerce).

tax interstate commerce within its borders, in violation of the principles of federalism and the Tenth Amendment's reservation of power to the States. See *International Shoe Co.* v. *Cocreham,* 246 La. 244, 266, cert. denied sub nom. *Mouton* v. *International Shoe,* 379 U.S. 902 (1964) (rejecting the Tenth Amendment claim raised here); *State ex rel. CIBA Pharmaceutical Prods., Inc.* v. *State Tax Comm'n,* 382 S.W.2d 645, 657 (Mo. 1964) (same). We disagree.

Congress's plenary power to regulate interstate commerce is well established. See, e.g., *Hodel* v. *Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 276 (1981). Consistent with this power, Congress can prohibit States from imposing taxes that interfere with interstate commerce. See, e.g., *Arizona Pub. Serv. Co.* v. *Snead,* 441 U.S. 141, 150 (1979). Where Congress acts within an enumerated power, such as its authority under the commerce clause, the Tenth Amendment is not implicated. *New York* v. *United States,* 505 U.S. 144, 156 (1992).

Moreover, merely limiting the States' power to tax is not sufficient encroachment upon the States' sovereign authority to warrant invalidating a Federal statute under the Tenth Amendment. See *Arizona* v. *Atchison, Topeka & Santa Fe R.R.,* 656 F.2d 398, 407 (9th Cir. 1981) ("We know of no authority for the proposition that Congress may not interfere with state taxation in furtherance of its power over interstate commerce"); *Southeastern Pa. Trans. Auth.* v. *Pennsylvania Pub. Util. Comm'n,* 826 F. Supp. 1506, 1520-1521 (E.D. Pa. 1993) ("The fact that pre-emptive federal legislation may impinge on a state revenue-raising scheme has no special Tenth Amendment implications. . . . Congress can, in furtherance of its commerce power, displace state taxation"), aff'd, 27 F.3d 558 (3d Cir.), cert. denied, 513 U.S. 928 (1994); *Arkansas-Best Freight Sys., Inc.* v. *Cochran,* 546 F. Supp. 904, 910 (M.D. Tenn. 1981) ("[T]he constitutional power of Congress under the commerce clause clearly permits some limitation on the states' power of taxation. As long as the legislation is rationally related to the goal of protecting interstate commerce . . . the mere fact that a state taxation scheme is affected does not itself invalidate the legislation"). Congress enacted § 381 pursuant to its power to regulate interstate commerce. *Kennametal, Inc.* v. *Commissioner of Revenue, ante* 39, 41 (1997). See *Heublein, Inc.* v. *South Carolina Tax Comm'n,* 409 U.S. 275, 279-281 (1972). Congress sought to allay concern that arose following the United States

Supreme Court's decision in *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U.S. 450 (1959), that "mere solicitation" would subject a foreign corporation to State taxation. See *Commissioner of Revenue* v. *Kelly-Springfield Tire Co.,* 419 Mass. 262, 265 (1994); *Heublein, supra* at 280. Section 381 sets a uniform minimum standard which must be met before a State may tax interstate commerce. See *Heublein, supra* at 280; *CIBA Pharmaceutical Prods., supra* at 657. This is clearly within the ambit of Congress's commerce power. See *International Shoe, supra* at 266; *CIBA Pharmaceutical Prods., supra* at 657.

Nor does § 381 exceed Congress's constitutional power by mandating State legislation or otherwise commandeering the States' legislative process. See *New York* v. *United States, supra* at 161; *Hodel, supra* at 288. Section 381 requires no State legislation or otherwise "command . . . state governments to implement legislation enacted by Congress." *New York* v. *United States, supra* at 176. The limitation set in § 381 is a permissibly small preclusion of State taxing power to protect interstate commerce.

The declaration entered by the Superior Court was correct and is affirmed.

*So ordered.*