## ATTORNEY GENERAL vs. HAROLD BROWN.

Suffolk.  May 6, 1987. — August 19, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Federal preemption. *Practice, Civil*, Summary judgment. *Housing. Anti-Discrimination Law*, Housing subsidy.

Discussion of the theories under which a State statute may be preempted by Federal law. [828-829]

General Laws c. 151B, § 4 (10) (1984 ed.), proscribing discrimination by landlords against any recipient of public assistance or housing subsidies, including rental assistance, "solely because the individual is such a recipient" does not conflict with and is not preempted by Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f (1982), establishing a program to aid lower-income families in obtaining affordable, decent housing, inasmuch as the Federal statute merely sets out guidelines for the voluntary implementation and funding of the Federal program, and where nothing in the Federal statute precluded State requirements that landlords participate in the Section 8 program if they offer apartments that fall within the Section 8 fair market rent guidelines. [829-831]

Summary judgment against a landlord for his alleged discrimination against a tenant in violation of G. L. c. 151B, § 4 (10), was not appropriate where the Commonwealth had the burden of proving such discrimination was "solely" on the basis of the tenant's status as a recipient of rental assistance and where the landlord advanced issues of fact with respect to business necessity to negate those allegations. [831-835]

Summary judgment entered against a landlord for his alleged violation of G. L. c. 151B, § 4 (6), based on a finding that this conduct violated G. L. c. 151B, § 4 (10), could not stand, where the materials before the judge did not establish a violation of § 4 (10). [836]

CIVIL ACTION commenced in the City of Boston Division of the Housing Court Department on October 13, 1983.

The case was heard by *E. George Daher, Jr.*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Nathan Z. Dershowitz* of New York (*Ellen J. Schneider* of New York *& Steven M. Brody* with him) for the defendant.

*Maria I. Lopez*, Assistant Attorney General, for the Attorney General.

LYNCH, J. The defendant, Harold Brown, appeals from a decision of a judge in the Housing Court granting summary judgment in favor of the Attorney General. In October, 1983, the Attorney General filed suit against Harold Brown, alleging violations of G. L. c. 151B, §§ 4 (6) and (10),[1] and seeking declaratory and injunctive relief and damages for "Section 8 certificate holders."[2] The Attorney General claimed that Brown violated G. L. c. 151B, § 4 (10), which prohibits landlords from discriminating against recipients of public assistance or housing subsidies including rental assistance "solely because the individual is such a recipient."[3] It was further alleged that, because most of such recipients are members of minorities, Brown violated G. L. c. 151B, § 4 (6), which prohibits certain

---

[1] General Laws c. 151B, § 4 (10) (1984 ed.), provides: "It shall be an unlawful practice: For any person furnishing credit, services or renting accommodations to discriminate against any individual who is a recipient of federal, state or local public assistance, including medical assistance, or who is a tenant receiving federal, state or local housing subsidies, including rental assistance or rent supplements, solely because the individual is such a recipient."

General Laws c. 151B, § 4 (6) (1984 ed.), makes it unlawful for "the owner, lessee, sublessee, licensed real estate broker, assignee or managing agent of publicly assisted or multiple dwelling or contiguously located housing accommodations . . . (*a*) to refuse to rent or lease or sell or negotiate for sale or otherwise to deny or withhold from any person or group of persons such accommodations because of the race, religious creed, color, national origin, sex, age, ancestry or marital status of such person or persons . . . [or]; (b) to discriminate against any person because of [the above listed factors] in the terms, conditions or privileges of such accommodations or the acquisitions thereof, or in the furnishings of facilities and services in connection therewith . . . ."

[2] Section 8 of the United States Housing Act of 1937 established a program "for the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a) (1982).

[3] Brown asserted before the Housing Court that he now accepts Section 8 tenants and that the issue was whether *in the past*, Brown's policies violated G. L. c. 151B, §§ 4 (6) and (10).

persons, including landlords of multiple dwelling or contiguously located housing accommodations from refusing to rent or to lease to, and from discriminating against, individuals "because of the race, religious creed, color, national origin, sex, age, ancestry or marital status" of such persons. On April 1, 1986, the judge granted the plaintiff's motion for summary judgment and ruled that Brown was in violation of G. L. c. 151B, §§ 4 (6) and (10). Brown appealed and we granted direct appellate review. We reverse.

1. *Federal preemption.* Brown claims that G. L. c. 151B, § 4 (10), is preempted by Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f(a) (1982), and therefore is void under the supremacy clause of art. 6 of the United States Constitution. Although the issue was not raised prior to this appeal, we may consider such an issue in exceptional circumstances. See *Albert* v. *Municipal Court of the City of Boston*, 388 Mass. 491, 494 (1983).[4] Since the issue of preemption could be dispositive of the case, we address it at the outset.

There are several theories under which a State statute may be preempted by Federal law. Congress may expressly state that State law is preempted, see *Jones* v. *Rath Packing Co.*, 430 U.S. 519 (1977), or an intent to preempt the field may be inferred where the scheme of the Federal legislation is so comprehensive that it creates the inference that Congress "left no room" for State regulation in that area, see *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). See also *California Fed. Sav. & Loan Ass'n* v. *Guerra*, 479 U.S. 272, 281 (1987). Neither theory applies here. There is nothing in the Federal statute that explicitly preempts State regulation. In fact, the Federal statute envisions participation by States in the implementation of the program, thus, reducing the persuasiveness of the argument in favor of preemption. See *Kargman* v. *Sullivan*, 552 F.2d 2, 11 (1st Cir. 1977). Furthermore, although the Federal scheme is comprehensive, there is no

---

[4] Similarly, even where a case may be not properly before the court, we may address the issue where it is one of significant public importance. *Selectmen of Braintree* v. *County Commissioners of Norfolk*, 399 Mass. 507, 508 (1987). *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

inference that Congress intended that there be no State regula-tion. See *New York State Dep't of Social Servs.* v. *Dublino,* 413 U.S. 405, 415 (1973).

Federal law may also preempt State law to the extent that it actually conflicts with the Federal law. *California Fed. Sav. & Loan Ass'n* v. *Guerra, supra* at 281. A conflict may be found where compliance with both State and Federal regula-tions is physically impossible, see *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U.S. 132, 142-143 (1963), or where the State statute "stands as an obstacle to the accomplish-ment and execution of the full purposes and objectives of Congress," *Hines* v. *Davidowitz,* 312 U.S. 52, 67 (1941). See *Jones* v. *Rath Packing Co., supra* at 525-526; *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health,* 379 Mass. 70, 81 (1979). Since compliance with both statutes is not impossible, we shall focus our inquiry on whether the State statute is an obstacle to the accomplishment of the Federal purpose.

"[P]re-emption is not to be lightly presumed." *Guerra, supra* at 281. There must be "actual, impermissible conflict," not merely "unsupported pronouncements as to [Federal] policy." *Grocery Mfrs. of Am., Inc., supra* at 82, quoting *Kargman* v. *Sullivan, supra* at 6. In addition, exclusive Federal power is less likely to be intended in areas of local, rather than national, importance. See *International Paper Co.* v. *Ouellette,* 479 U.S. 481, 493 (1987) (control of interstate pollution primarily matter of Federal law); *Goldstein* v. *California,* 412 U.S. 546, 553-554 (1973) (power to grant copyrights national in scope); *Kargman* v. *Sullivan, supra* at 11.

Brown claims that the State statute, as interpreted by the Housing Court judge, mandates a landlord's participation in a voluntary Federal program and, therefore, violates the suprem-acy clause. The Attorney General claims that there is nothing in the Federal statute that would prohibit States from requiring landlords to participate in the Section 8 program where they offer apartments that fall within the Section 8 fair market rents.

The State statute does not conflict with the Federal statute and is not preempted thereby. Both G. L. c. 151B, § 4 (10) and

42 U.S.C. § 1437f (1982) share a common goal, i.e., affordable, decent housing for those of low income. While the Federal scheme envisions voluntary participation, such is not necessarily the "heart" of the Federal scheme, as the defendant suggests. That terminology would more appropriately be applied to the goals and purposes of the scheme which are "aiding lower-income families in obtaining a decent place to live and . . . promoting economically mixed housing." 42 U.S.C. § 1437f(a) (1982).

It does not follow that, merely because Congress provided for voluntary participation, the States are precluded from mandating participation absent some valid nondiscriminatory reason for not participating. The Federal statute merely creates the scheme and sets out the guidelines for the funding and implementation of the program by the United States Secretary of Housing and Urban Development (HUD) through local housing authorities. It does not preclude State regulation.

In *Massachusetts Medical Soc'y* v. *Dukakis,* 637 F. Supp. 684, 699 (D.Mass. 1986), aff'd, 815 F.2d 790 (1st Cir. 1987), the court found nothing in the Federal Medicare Act precluding States from prohibiting balance billing even though the Federal act does not. The court reasoned that the mere fact that the Federal act contained no prohibition of balance billing did not mean that the States could not prohibit such a practice. *Id.*[5] Similarly, in *Kargman* v. *Sullivan, supra,* the United States Court of Appeals for the First Circuit upheld a Boston rent control ordinance against a challenge that it was preempted by Federal housing legislation which set the maximum rents for federally subsidized apartment complexes. *Id.* at 4, 13. The court ruled that the HUD rents were not minimum rents and that Boston was not necessarily foreclosed from creating a rent control system mandating lower rents, *id.* at 7, and that no actual conflict was demonstrated even though "some adverse financial consequences" to the landlords did exist, *id.* at 13.

---

[5] The court acknowledged that participation in the Medicare program itself was voluntary; therefore, the State prohibitions against balance billing did not mandate something that Congress had made voluntary. *Massachusetts Medical Soc'y* v. *Dukakis, supra* at 702. We do not believe, however, that this compels a different result in the present case.

The present case is distinguished from *Rose* v. *Arkansas State Police*, 479 U.S. 1 (1986), where the Court concluded that the State statute conflicted with the Federal. In that case, the Public Safety Officers' Death Benefits Act, 42 U.S.C. §§ 3796 et seq. (1982), provided for benefits "in addition to any other benefit that may be due from any other source," thus clearly manifesting an intent to provide additional benefits over those granted by the State. *Rose* v. *Arkansas State Police, supra* at 2-3. A State statute that offset State benefits by the amount of the benefit provided by the Federal act clearly conflicted with the purpose of the Federal act.

In the present case, the defendant has failed to demonstrate an actual impermissible conflict. In fact, the Federal scheme envisions State and Federal coordination. In *Kargman* v. *Sullivan, supra* at 11, the court saw the "federal housing legislation [which] creat[ed] the network of subsidized housing law [as] superimposed upon and consciously interdependent with the substructure of local law relating to housing." Thus, we conclude that G. L. c. 151B, § 4 (10), is not preempted by Federal law and does not violate the supremacy clause.

2. *Summary judgment.* In his order of April 1, 1986, the Housing Court judge found that the Boston Housing Authority (BHA) and the Executive Office of Communities and Development (EOCD), which issue Section 8 certificates in the Boston area, currently provide Section 8 assistance payments on behalf of 3,670 and 2,826 eligible families, respectively. Approximately 50% of the families who received Section 8 certificates through BHA and EOCD are unable to secure housing for which they can use their certificates, "principally because of discrimination against Section 8 certificate holders." He also found that Section 8 certificate holders are "overwhelmingly blacks and other minorities."[6]

The judge further found that Harold Brown, who owns or has a general partnership interest in 8,000 residential units of which 3,000 are in the Allston-Brighton area of Boston, refused

---

[6] The judge found that between July, 1982, and January, 1985, 79% of the Section 8 certificates issued by the BHA went to members of minorities.

to process rental applications from holders of Section 8 certificates. Between July, 1982, and May, 1984, Brown had approximately 800 apartments in the one-bedroom to three-bedroom category that were within the fair market rentals allowed under Section 8.[7] The reasons given by Brown for his practice of refusing to rent to Section 8 certificate holders were as follows: He would not rent to anyone who did not make an advance payment of the last month's rent and sign the lease form used by Brown's own realty company; Section 8 leases are materially less advantageous to him; it is more costly to deal with the administrative bureaucracy of the Section 8 program, and he loses money from a tenant from whom he cannot collect the last month's rent.

The judge granted summary judgment for the Attorney General and held that Brown's practice of refusing to process rental applications from Section 8 certificate holders was a violation of G. L. c. 151B, § 4 (10). He found that Brown's reasons were directed at the regulatory and administrative requirements of the program and, therefore, constituted discrimination against a Section 8 certificate holder "solely because the individual is such a recipient." He also granted summary judgment for the Attorney General on the alleged violation of G. L. c. 151B, § 4 (6), stating that Brown's practice of refusing to process applications from Section 8 certificate holders had a disproportionate impact on members of minorities.

In order to prevail on a motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 370, cert. denied, 459 U.S. 970 (1982). See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The court is not to pass on the credibility of the witnesses or on the weight of the evidence. *Id.* at 370. Since the Attorney General has the burden of proof in this case, it is not necessary for us to decide whether

---

[7] The Attorney General's claim is that Brown discriminated in relation to those apartments which fall within the fair market rentals allowed by Section 8. There is no contention that Brown should be forced to lower his rents in order to make his properties accessible to Section 8 certificate holders.

to apply in this Commonwealth the Federal standard imposing a somewhat greater burden on the party opposing such a motion who bears the burden of proof on the issue in question. See *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-326 (1986); *King* v. *Globe Newspaper Co., ante* 705, 719 (1987).

In *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130 (1976), this court set out the standard of proof necessary to establish unlawful discriminaton under G. L. c. 151B. Although the case dealt with sex discrimination in employment, the general rule regarding burden of proof under G. L. c. 151B was not so limited. *Wheelock College, supra* at 131, 136-139. Once the complainant proves a prima facie case of unlawful discrimination, the burden shifts to the respondent to produce evidence of a nondiscriminatory reason for the action. *Id.* at 136-138. The burden of proof, however, rests at all times with the complainant. *Id.* at 139. Furthermore, it must be kept in mind that under G. L. c. 151B, § 4 (10), the discrimination must be "solely" on a prohibited basis.

In his opposition to the plaintiff's motion for summary judgment, Brown claimed that he had legitimate business reasons for refusing to accept Section 8 tenants. He stated in his affidavit that he wished to use his own lease form because the Section 8 lease was less advantageous to him and that, in some instances, housing authorities have allowed variations. He further claimed that it was important for him to be able to collect the last month's rent and, in some cases, one month's rent as a security deposit, because he could earn more money in interest than the amount which he must return to the tenant.[8]

In his appeal Brown claims that he did not violate G. L. c. 151B, § 4 (10), since he did not discriminate against Section 8 certificate holders "solely" because they were recipients of such assistance. He claims that summary judgment was inappropriate due to disputed issues of fact material to his claims.

---

[8] Under G. L. c. 186, § 15B (1986 ed.), a landlord may legally collect from a tenant a security deposit not greater than one month's rent and, in addition, an advance payment of the last month's rent. Both, however, must be placed in an interest bearing account in the tenant's name and the tenant must be paid 5% annual interest.

It is clear that local housing authorities cannot make accommodations which conflict with the provisions of the Section 8 program. The regulations do not allow for advance payment of the last month's rent. See 24 C.F.R. §§ 882.105(b) and 882.112(b) (1986). Advance payment is limited to a security deposit of $50 or one month's total tenant payment, whichever is greater. 24 C.F.R. § 882.112(a) (1986). The regulations provide for remedies in the event that the tenant vacates the premises owing rent. 24 C.F.R. § 882.112(b) (1986).

A local housing authority could not approve Brown's standard lease since it contains provisions which are clearly contrary to the provisions of the Section 8 program. Under the regulations, the lease must comply with requirements of the program and cannot contain certain prohibited lease provisions. 24 C.F.R. § 882.209(k) & Appendix I (1986). Brown's lease contained provisions such as those requiring advance payment of the last month's rent and a security deposit over and above that allowed under the regulations.

Thus, whether local housing authorities waived any of the requirements of the Section 8 program is immaterial. There are, however, issues which we believe to be material to the central issue whether Brown discriminated against recipients of Section 8 subsidies "solely" because of their status as such. Brown claims that legitimate business reasons kept him from renting to Section 8 certificate holders, primarily his loss of the cash flow engendered from his collecting, in advance, the last month's rent and a security deposit equal to one month's rent. That these reasons are related to the requirements of the Section 8 program does not necessarily equate with discrimination "solely" on the basis of the individual's status as a Section 8 certificate holder. Brown should have an opportunity to litigate the issue whether his reasons are legitimate business reasons which are not satisfied by the protections afforded by the regulations of the Section 8 program.

The Attorney General claims that the protections gained from the collection of the last month's rent in advance are provided by 24 C.F.R. § 882.105(b) (1986), which provides that, when a tenant leaves in violation of the lease, a landlord

may collect from the housing authority the total rent payment for that month *plus* 80% of the total rent payment for an additional month, provided the apartment remains vacant.[9] It is unclear whether, in the present case, these protections are enough to dispel the negative effects, if any, that would inure to Brown in his not being able to collect from Section 8 certificate holders an advance of the last month's rent and a security deposit greater than that allowed by Section 8 regulations. Furthermore, Brown contends that not only is he forced to forgo the security afforded by the advance payments that he normally collects, but also that he is being deprived of the benefits of a positive cash flow for various of his projects as well.

The Attorney General claims that any loss due to the inability of Brown to collect the last month's rent is "de minimis" since under G. L. c. 186, § 15B (1984 ed.), a landlord must place a tenant's security deposit in a separate account and pay the tenant 5% annual interest. While the amount of interest over 5% that a landlord may be able to obtain on an advance of the last month's rent on an individual apartment may be "de minimis," that is not necessarily the case here. As stated above, Brown owns or has interest in 3,000 residential units in the Allston-Brighton area of Boston and between July, 1982, and May, 1984, had approximately 800 units that fell within Section 8 guidelines. An interest spread of 1% in Brown's favor would be a substantial economic benefit and it does not necessarily follow that his attempt to maintain that benefit constitutes discrimination "solely" because the individuals seeking tenancy were recipients of assistance under the Section 8 program. Thus, since issues of fact must be resolved, the plaintiff is not entitled to summary judgment.

---

[9] The statute also provides for adjustments in the monthly rents to reflect changes in the fair market rentals, and additional adjustments "to the extent [the Secretary] determines such adjustments are necessary to reflect increases in the actual and necessary expenses of owning and maintaining the units," including increases in taxes, utility rates, and other costs. 42 U.S.C. § 1437f(C)(2)(B) (1982). Furthermore, a landlord can terminate a tenancy under the Section 8 program for "good causes" including the landlord's "desire to rent the unit at a higher rental." 24 C.F.R. § 882.215(c)(2) (1986).

The Attorney General claims that the reasons Brown uses to show business necessity in relation to the claim of violation of G. L. c. 151B, § 4 (6), are invalid because they are unlawful under G. L. c. 151B, § 4 (10). Since we conclude that it has not yet been established that Brown's policies were unlawful under § 4 (10), we cannot uphold a summary judgment under § 4 (6) which relies on a violation of § 4 (10).

*Judgment reversed.*