701 A.2d 739

FRANKLIN TOWER ONE, L.L.C., AS SUCCESSOR IN INTEREST
TO SAVA HOLDING CORPORATION, PLAINTIFF–RESPON-
DENT, v. N.M., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 9, 1997—Decided October 22, 1997.

Before Judges HAVEY, NEWMAN and COLLESTER.

*John Ukegbu* argued the cause telephonically for appellant (*Timothy K. Madden,* Director, Hudson County Legal Services Corp.; *Mr. Ukegbu,* of counsel and on the brief),

*Tara P. D'Amato* argued the cause for respondent.

The opinion of the court was delivered by

NEWMAN, J.A.D.

Defendant, tenant, appeals from a judgment in favor of plaintiff, landlord, in a summary dispossess action, holding that a landlord is not required under *N.J.S.A.* 2A:42–100 to accept federal Section 8 rental assistance payments, pursuant to 42 *U.S.C.A.* § 1437f, from an existing tenant where no other tenants in the same building were receiving Section 8 voucher payments. Because we are convinced that Section 8 payments are encompassed by *N.J.S.A.* 2A:42–100, prohibiting landlords of multi-dwelling units from refusing to rent to an individual because of the "source of any lawful rent payment," and the statutory anti-discrimination provision of 2A:42–100 is not preempted by federal legislation, we reverse.

The relevant facts are not disputed. Sava Holding Corporation (Sava) was the owner of an eighteen-unit residential building located at 211 64th Street in West New York, New Jersey. Every tenant resides in the building subject to an oral month-to-month tenancy. Defendant, who has been a tenant in the building since 1991, is sixty-four years old and unable to work. Her sole income is a monthly grant of Social Security in the amount of $521.80. Defendant also receives between $100 and $200 a month in food stamps. Her monthly rent is $450 per month, but Sava agreed to defendant's request to reduce the rent to $425 per month. With her remaining $89, defendant pays her electric bill and rents a

mattress on which to sleep. Eighty-six percent of defendant's disposable income is used for rent and related shelter costs. Defendant applied for subsidy assistance through the Section 8 program when she first became a tenant in 1991. The property is subject to the West New York Rent Control Ordinance.

On April 22, 1996, the West New York Housing Authority issued defendant a Section 8 rental voucher. This voucher provided that the Housing Authority would, pursuant to a contract with the landlord, make monthly payments to Sava to assist defendant in paying the rent. Two days later, defendant tendered the Section 8 voucher and requisite documents to Sava, but Sava refused to execute the documents and accept rental payments from the Housing Authority because it did not want to become enmeshed in the "bureaucracy" of the Section 8 program. Sava had never been involved in the Section 8 rental assistance program nor any other federal or state rental assistance program.

On May 10, 1996, plaintiff filed a summons and complaint in tenancy against defendant for nonpayment of rent. Trial was held on July 30, 1996. On September 13, 1996, the trial judge issued a written opinion in which he determined that Sava could not be compelled to accept Section 8 vouchers as payment for rents lawfully due and owing. The trial judge held that, because of the "considerable administrative burden," and because compelled participation in the Section 8 program would alter the preexisting contractual agreement between the parties to plaintiff's detriment, plaintiff had a valid and lawful right to refuse to participate in the Section 8 program. He further concluded that the landlord's refusal did not constitute a breach of its implied covenant of good faith. The trial judge found that the plain language of *N.J.S.A.* 2A:42-100 did not encompass Section 8 voucher payments, and that even if it did, the statute was preempted by 42 *U.S.C.A.* § 1437f(a).

The corresponding judgment was entered on October 7, 1996, in which it was ordered that the total amount of rent due and owing as of September 1996 was $2,125, and that a warrant of removal

would issue if defendant did not tender that amount to plaintiff by October 9, 1996.[1]

On appeal, defendant contends that she is entitled to have the Section 8 voucher payment, pursuant to *N.J.S.A.* 2A:42–100, accepted as lawful payment for rent. Defendant argues that the statute is not preempted by 42 *U.S.C.A.* § 1437f because both the state and federal statutes share a common goal of affordable, decent housing for low-income individuals. Defendant further asserts that New Jersey's public policy of protecting the state's most vulnerable citizens from being displaced from affordable housing buttresses its position as an existing tenant to have the Section 8 voucher payments accepted by the landlord. In addition, defendant claims that the landlord's refusal to accept the Section 8 voucher payments constitutes a breach of its implied covenant of good faith.

In *M.T. v. Kentwood Const. Co.,* 278 *N.J.Super.* 346, 651 *A.2d* 101 (App.Div.1994), we recognized that Section 8 voucher payments were encompassed within both the letter and spirit of *N.J.S.A.* 2A:42–100, which prohibits the refusal "to rent or lease any house or apartment to another person because of the source of any lawful income received by the person or the source of any lawful rent payment to be paid for the house or apartment." Plaintiff attempts to distinguish the *Kentwood* case, arguing that the landlord there had engaged in unjustifiable discrimination by accepting Section 8 rent payments from other tenants while refusing to accept such payments from M.T., an existing tenant.

In our view, the distinction drawn by plaintiff is of no consequence. Section 8 payments clearly fall within the ambit of *N.J.S.A.* 2A:42–100. It matters not that plaintiff has no other tenants receiving Section 8 voucher payments in this particular building. This existing tenant is entitled to utilize the Section 8

---

[1] On March 17, 1997, Sava sold the property in question to Franklin Tower One, L.L.C. (Franklin Tower), who is the successor in interest to Sava and the named party on this appeal.

subsidy to assist in the payment of rent. Plainly stated, *N.J.S.A.* 2A:42–100 prohibits discrimination as to source of rental payment. Plaintiff must therefore accept those payments and execute the necessary documents to insure that the Section 8 voucher payments continue to be made on defendant's behalf.

■ We further reject the contention that federal legislation has preempted the provisions of *N.J.S.A.* 2A:42–100 insofar as they include Section 8 voucher payments. Both 42 *U.S.C.A.* § 1437f and *N.J.S.A.* 2A:42–100 share the common goal of seeing that low-income residents obtain affordable, decent housing. The heart of 42 *U.S.C.A.* § 1437f is aiding low-income residents in obtaining affordable housing. This very issue was addressed in *Attorney General v. Brown*, 400 *Mass.* 826, 511 *N.E.*2d 1103 (1987). There, a landlord was charged with violating a statute which prohibited landlords from discriminating against recipients of public assistance or housing subsidies, including rental assistance, "solely because the individual is such a recipient." *Brown*, 511 *N.E.*2d at 1105. The landlord claimed that the statute was preempted by 42 *U.S.C.A.* § 1437f(a) and therefore was void under the supremacy clause. *Ibid.* In rejecting this argument, the court found that both the state and the federal statutes

share a common goal, i.e., affordable, decent housing for those of low income. While the Federal scheme envisions voluntary participation, such is not necessarily the "heart" of the Federal scheme, as the defendant suggests. That terminology would more appropriately be applied to the goals and purposes of the scheme which are "aiding lower-income families in obtaining a decent place to live and ... promoting economically mixed housing." 42 *U.S.C.* § 1437f(a).

It does not follow that, merely because Congress provided for voluntary participation, the States are precluded from mandating participation absent some valid nondiscriminatory reason for not participating. The Federal statute merely creates the scheme and sets out the guidelines for the funding and implementation of the program by ... (HUD) through local housing authorities. It does not preclude State regulation.

[*Id.* 511 *N.E.*2d at 1106.]

*But see, Knapp v. Eagle Property Management Corp.*, 54 *F.*3d 1272, 1280 (7th Cir.1995) (reasoning that holding a property owner liable for rejecting a prospective Section 8 tenant would make a voluntary federal program mandatory). We find the reasoning in

*Brown* especially persuasive because of the strong public policy in this state to secure affordable housing for low-income persons.

*N.J.S.A.* 2A:42–100 was part of *L.* 1981, *c.* 323, entitled "An act making it unlawful to refuse to rent to persons with children under certain circumstances and to refuse to rent to a person because of objections to the person's source of income and providing civil penalties therefore and repealing *N.J.S.* 2A:170–92." The repealed statute related to discrimination in housing rentals against tenants with children. The act's purpose, in part, was to "prohibit[ ] a landlord from refusing to rent to a person merely because of objections to the source of the person's lawful income." *Assembly Commerce, Industry and Professions Committee, Statement to A. 994* (May 1, 1980). On the signing of the legislation, Governor Byrne's press release for A. 994 stated: "The Bill is intended to protect from housing discrimination welfare recipients, spouses dependent on alimony and child support payments and tenants receiving governmental rent assistance." In interpreting the statute, primary regard must be given to the fundamental purpose for which the legislation is enacted. *Central Constr. Co. v. Horn,* 179 *N.J.Super.* 95, 104, 430 *A.*2d 939 (App.Div.1981). The overriding purpose of this law, as the legislative history makes clear, was the protection of low-income tenants. The legislature expressly stated that it was seeking to prohibit a landlord from discriminating against a tenant solely because of the source of its rent payment. It is, therefore, obvious that Section 8 payments are clearly within the ambit of *N.J.S.A.* 2A:42–100.

The public policy underlying *N.J.S.A.* 2A:42–100 is further implemented through the provisions of the Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1 to –61.12 (the Act). The Act was passed as remedial legislation to protect residential tenants from the effects of what had become a critical housing shortage. Its aim was to safeguard residential tenancies, who were generally complying with their obligations as tenants, by limiting their removal from covered premises to those situations in which reasonable grounds existed for removal and suitable notice was given. *Riverview*

*Realty v. Williamson,* 284 *N.J.Super.* 566, 568, 665 *A.2d* 1150 (App.Div.1995); *Montgomery Gateway East I v. Herrera,* 261 *N.J.Super.* 235, 241, 618 *A.2d* 865 (App.Div.1992). Specifically, our legislature expressed its intent as follows:

> It is in the public interest of the State to maintain for citizens the broadest protections available under the state eviction laws to avoid such displacement and resultant loss of affordable housing, which, due to housing's uniqueness as the most costly and difficult to change necessity of life, causes overcrowding, unsafe and unsanitary conditions, blight burdens on community services, wasted resources, homelessness, emigration from the State and personal hardship, which is particularly severe for vulnerable seniors, the disabled, the frail, minorities, large families and single parents.
>
> [*N.J.S.A.* 2A:18–61.1a(d).]

Under the Act, a residential tenant may be removed only for good cause, such as where the tenant fails to pay rent due and owing under the lease whether the lease be oral or written. *N.J.S.A.* 2A:18–61.1(a). The Act reflects the public policy that landlord rights must, in the interest of general welfare, defer to the needs of the tenant population. *Morristown Mem'l. Hosp. v. Wokem Mortg. & Realty Co., Inc.,* 192 *N.J.Super.* 182, 188, 469 *A.2d* 515 (App.Div.1983).

We find the conclusion inescapable that the Section 8 program under 42 *U.S.C.A.* § 1437f has not preempted our state, through *N.J.S.A.* 2A:42–100, from making its provisions mandatory for a landlord who has an existing tenant entitled to use Section 8 voucher payments to assist in rent payments. Indeed, defendant, a senior citizen, existing on Social Security checks and food stamps, is part of the targeted population whom the Section 8 program was designed to help. Defendant's landlord cannot refuse to receive the Section 8 rental assistance payments and must therefore comply by executing the documents to insure that such assistance is forthcoming to the tenant.[2]

---

[2] The current nature of the public housing market and the Section 8 program has recently been the subject of discussion in legal periodicals. Because of budget cuts, less public housing is being constructed. The Section 8 program has therefore taken on greater importance in securing housing for low-income individuals. *See* Paula Beck, *Fighting Section 8 Discrimination: The Fair*

In view of our disposition, it is unnecessary for us to determine whether plaintiff violated the implied covenant of good faith and fair dealing of its oral lease with defendant.

Reversed and remanded for entry of an order vacating the warrant for removal and directing that plaintiff execute the necessary documents to comply with the Section 8 rental assistance payments that defendant is entitled to receive.

*Housing Act's New Frontier*, 31 *Harv. C.R.-C.L. L.Rev.* 155, 159–60 (Winter 1996). Allowing landlords to deny housing to such individuals because their rent is subsidized by Section 8 vouchers will only exacerbate the existing need, and in all likelihood, greatly increase the homeless population. *See* Mark A. Malaspina, Note, *Demanding the Best: How to Restructure the Section 8 Household–Based Rental Assistance Program*, 14 *Yale L. & Pol'y Rev.* 287, 288, 311 (1996) (noting that Section 8 recipients often cannot find desirable apartments because many landlords simply refuse to rent to such individuals and that low-landlord participation is a serious, if not the most serious, problem with the Section 8 program).