Lauriat, J.
The Modified Motorcycle Association of Massachusetts, Inc. (“MMAM”) has brought this action seeking declaratory and injunctive relief premised on its assertion that G.L.c. 90, §7, the Massachusetts motorcycle helmet law, is unconstitutional both on its face and as applied. Through the litigation process, MMAM’s assertions have been winnowed down to one remaining allegation: that the statute and the Registrar of Motor Vehicle’s regulation derived from that statute, 540 C.M.R. §22.08, are invalid because they are preempted by a Federal law mandating a different manufacturing standard for motorcycle helmets.
The matter is now before the court on the defendant’s motion to dismiss the complaint pursuant to Mass.R.Civ.P. 12 (b)(6) on the ground that MMAM has failed to state a claim upon which relief can be granted.
BACKGROUND
MMAM is a non-profit Massachusetts corporation which, by its own account, represents in excess of eight hundred (800) motorcycle riders and civil rights activists. The riders and activists, to the extent that they constitute different groups, have been galvanized into a unified force by the alleged actions of various law enforcement agencies within the Commonwealth. MMAM’s complaint recites numerous incidents in which law enforcement officers have allegedly used the helmet law to harass and intimidate motorcyclists. MMAM, having failed to join any of the aggrieved motorcyclists as co-plaintiffs, and having failed to proceed against any of the offending law enforcement agencies, takes the Olympian view and seeks to vindicate the general constitutional rights of its members and all other similarly situated motorcyclists.
According to MMAM, the helmet law is a particularly appropriate vehicle for law enforcement misconduct because it is subject to conflicting Federal and State regulatory standards. The regulations authorized by G.L.c. 90, §7, require that motorcycle helmets cover an area beginning 2.36 inches above a hypothetical line on the wearer’s head. The corresponding Federal standard delineates a similar area, but beginning 2.5 inches above the same hypothetical line. Thus, MMAM contends, it is possible to comply with the Federal standard while still violating Massachusetts law. This fertile .14 inch of unprotected area is, according to MMAM, rich in possibilities for mistreatment of motorcyclists by the eagle-eyed guardians of highway safety throughout the Commonwealth, because manufacturers gear their helmet production to the Federal standard.
DISCUSSION
In considering a motion to dismiss under Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of a well pleaded complaint as well as any inferences that can be drawn from those allegations in favor of the plaintiff. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996). Taking the pleadings and such inferences in this light, ”[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
I.
The Supremacy Clause of Article VI of the United States Constitution “provides Congress with the power to preempt state law.” Louisiana Public Service Commission v. Federal Communications Commission, 476 U.S. 355, 368-69 (1986). As a general rule, preemption is not favored, and the party asserting the existence of preemption bears the burden of demonstrating that an actual conflict exists by hard evidence on the record. Sawash v. Suburban Welders Supply Co., 407 Mass. 311, 315 (1990). If such a party carries its *17 burden, state courts are “obligated to declare invalid any State statute and regulation that is preempted by Federal law." Commonwealth v. College Pro Painters (U.S.) Ltd., 418 Mass. 726, 728 (1994).
Federal preemption can arise in several ways. “Congress may expressly state that State law is preempted or an intent to preempt the field may be inferred where the scheme of Federal legislation is so comprehensive that it creates the inference that Congress ‘left no room’ for State regulation in that area.” Attorney General v. Brown, 400 Mass. 826, 828 (1987). When a federal statute directly addresses preemption, and that statute provides a “reliable indicium of congressional intent with respect to state authority, . . . there is no need to infer congressional intent to preempt state laws from the substantive provisions of the legislation.” Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517-18 (1992). In addition, “(F)ederal law may also preempt State law to the extent that it actually conflicts with the Federal law. A conflict may be found where compliance with both the State and Federal regulation is physically impossible, or where the State statute stands ‘as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ’’ Attorney General v. Brown, 400 Mass. at 829, quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1963).
II.
Any application of these principles to the present case must begin with an examination of the Federal and Massachusetts statutes and regulations that MMAM has alleged are in conflict. Enacted in 1967, G.L.c. 90, §7 states, in pertinent part:
Every person operating a motorcycle or riding as a passenger on a motorcycle or in a sidecar attached to a motorcycle shall wear protective head gear conforming with such minimum standards of construction and performance as the registrar may prescribe.. . ."
Pursuant to this grant of authority, the Registrar of Motor Vehicles promulgated 540 C.M.R. §22.08, which states:
Every operator of or passenger on a motorcycle or motorized bicycle, including a passenger in a sidecar, shall wear a helmet, with a suitable retaining device in position, designed and manufactured to protect at least the area of the wearer’s head above a reference plane 2.36 inches (60 mm) above and parallel to a plane defined by the level of the external ear openings and the lower rim of the eye openings.
Each such helmet shall meet or exceed the standards established in the United States Department of Transportation’s Federal Motor Vehicle Safety Standard No. 218, 49 C.F.R. 571.218 for motorcycle helmets as enacted and from time to time amended.
MMAM contends that the statute and regulations conflict with 15 U.S.C. 1381, et seq., the National Traffic and Motor Vehicle Safety Act of 1966. Strictly speaking this is incorrect, as 15 U.S.C. §1381, et seq. has been repealed. Pub. L. 103-272 §7(b), July 5, 1994, 108 Stat. 1379. However, mindful of its duty to determine that there is no set of facts under which plaintiff can prevail, the court has discerned the existence of successor legislation providing a similar regulatory scheme. Without specifically naming motorcycles, the definition of a motor vehicle found in 49 U.S.C. §30102(a)(6) includes these conveyances, and motorcycle helmets can be considered motor vehicle equipment as defined in 49 U.S.C. §30102(a)(7)(C). The provisions of 49 U.S.C. §30100 et seq. provide sufficient authorization for the Department of Transportation to promulgate 49 C.F.R. 517.218 regulating manufacturing standards for motorcycle helmets.
Reference to 49 C.F.R. 517.218 discloses that in this case, the Massachusetts and Federal regulations are not in actual conflict. While the Federal regulation addresses the conduct of motorcycle helmet manufacturers, it is entirely silent on the duties of the motorcycling public, which is the specific concern of the Massachusetts regulation. The Federal regulation describes the relationship of a motorcycle helmet to one of three specifically delineated head forms and mandates that, with the application of a ten pound load on the helmet’s apex, the coverage area must start at least 2.5 inches above the reference plane. This standard is designed to ensure that helmets can withstand an impact occurring at fifteen miles per hour.
This lack of actual conflict between Federal and State regulations is clearly demonstrable when, examining the ways in which preemption can arise. The relationship of Federal to Massachusetts laws is addressed under the new statutory regime in 49 U.S.C. §30103(b)(1), which reads:
When a motor vehicle safety standard is in effect under this chapter, a State or political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed by this chapter . . .
This provision makes any inference of Congressional intent unnecessary since it directly expresses Congress’s will with regard to motor vehicle safety standards promulgated under the statute. However, this is applicable only to the Commonwealth’s ability to change such standards. The Commonwealth is manifestly not seeking to accomplish this goal in G.L.c. 90, §7 nor in the regulations authorized under that statute.
In examining the language of 540 C.M.R. §22.08, the court concludes that it imposes no obstacles that would prevent compliance with both Massachusetts 'and Federal laws and regulations. The State regulation mandates that motorcyclists wear helmets that “meet *18 or exceed the standards” established by the Federal government. Thus any reference to a larger protected area elsewhere in the regulation is subsumed in this provision, which in itself implicitly recognizes and accommodates the preemptive effect of the Federal regulatory scheme. Motorcyclists wearing helmets built to federal specifications cannot, therefore, fail to comply with the Massachusetts regulations. The ability to simultaneously comply with Federal and State regulations ensures that Congress’s purposes and objectives will be met.
MMAM alleges that the self-certifying nature of manufacturer compliance (preserved in the new statutory scheme at 49 U.S.C. §30115) has resulted in the release into the stream of commerce of many non-compliant helmets. MMAM alleges that in excess of 60% of the helmets sold in the country do not meet the standards of 49 C.F.R. 571.218. Assuming that this figure is accurate, the Federal enforcement mechanism, geared as it is to manufacturers and designers, envisions a manufacturer in such a circumstance requesting an exemption from the Secretary of the Department of Transportation for noncompliant items. The Secretary has discretion to overlook variations from the manufacturing standards when the divergence is “inconsequential to motor vehicle safety.” 49 U.S.C. §30118(d). The record is devoid of any indication of the Secretary’s thinking on the consequential nature of the .14 inch variation at issue here. However, the statutory scheme clearly envisions circumstances in which allowable variations exist between the safety standards and the helmets motorcyclists actually wear.
III.
None of the above addresses MMAM’s basic contention that law enforcement agencies throughout the Commonwealth improperly use G.L.c. 90, §7 and 540 C.M.R. §22.08 to harass and intimidate motorcyclists. A determination of such a claim must necessarily await the presentation of an actual case in which it is alleged the statutory scheme was used in this manner. MMAM is no longer bringing that claim in this action. Confining itself to the issues before it, the court concludes that Federal law concerning the standard that designers and manufacturers must use in the production of motorcycle helmets, does not preempt the Massachusetts statute and regulation mandating the types of helmets motorcyclists must wear. Therefore, MMAM’s request for declaratory and equitable relief cannot be sustained.
ORDER
For the forgoing reasons, defendant, the Commonwealth of Massachusetts’ Motion to Dismiss is ALLOWED.