■ Mother Zion Tenant Association et al., Appellants, v Shaun Donovan, as Commissioner of the New York City Department of Housing Preservation and Development, Respondent, et al., Respondent. [865 NYS2d 64]—

Order and judgment (one paper), Supreme Court, New York County (Marilyn Shafer, J.), entered May 21, 2007, which denied petitioner tenant association's application for an injunction compelling respondent Commissioner of the New York City Department of Housing Preservation and Development (HPD) to convene an appraisal panel and promulgate rules for the determination of an appraised value, and for a declaration that respondent Mother Zion Associates, LP, the owner of the housing project in which the tenants reside (Owner), is subject to Local Law No. 79 (2005) of the City of NY (Administrative Code of City of NY § 26-801 *et seq.*), and dismissed the proceeding, unanimously affirmed, without costs.

For the purpose of aiding low-income families obtain decent and affordable housing, section 8 of the United States Housing Act of 1937 (codified as 42 USC § 1437f) provides for rent subsidies to owners of multiple dwelling rental properties, either through vouchers issued to individual tenants or through project-based programs. In order to entice owners to develop section 8 housing, in the 1960s Congress enacted legislation offering developers below-market interest rates and mortgage insurance for 40-year mortgages (12 USC § 1715*l*, 1715z-1; *see Forest Park II v Hadley*, 336 F3d 724, 728 [8th Cir 2003]). However, owners had a right to prepay the federal mortgages and exit the section 8 program after 20 years (*see Forest Park II* at 728). Subsequent legislation required owners opting out of the section 8 program to give one year's notice to the United States Department of Housing and Urban Development (HUD), the appropriate state and local agencies, and the affected tenants (*see* 42 USC § 1437f [c] [8]; 12 USC § 4106), and provided for "enhanced voucher assistance" for tenants (42 USC § 1437f [t]) and other incentives, including restructuring of mortgage debt and increased rents, to induce owners to remain in the section 8 program or to enable tenants to remain in their apartments after an owner exits the program. Thus, the federal section 8 program is a voluntary one, based on incentives.

In August 2005, the New York City Council enacted, over a mayoral veto, Local Law 79 (Administrative Code § 26-801 *et seq.*), which provides, inter alia, that owners of "assisted rental housing," including section 8 and Mitchell-Lama programs, must provide tenants and HPD with one year's notice of intent to withdraw from such an assisted housing program (§ 26-802 [a]; § 26-801 [f]), and grants the tenants, through a tenant association or qualified entity approved by HPD, a right of first opportunity to purchase the building at an "appraised value" set by a three-member "advisory panel" or a right of first

refusal to purchase at the price offered by a bona fide purchaser approved by HPD (§ 26-804 [a]-[d]; § 26-805 [a], [c], [e]; § 26-806 [a], [b], [d]; § 26-801 [k], [n], [o]); the Local Law does not specify whether the appraised value is to be based on the building's worth as assisted rental housing or unencumbered property that can be let at market rates or otherwise developed. Local Law 79 thus forces an owner to choose between remaining in section 8 or offering to sell the building at a rate determined by appraisers.

In the early 1980s, well before the enactment of Local Law 79, Owner obtained a 40-year, low-interest, HUD-backed mortgage to construct the subject 76-unit apartment building, and entered into a 20-year housing assistance payments (HAP) contract that set rents and provided for tenants to pay up to 30% of gross household income for rent, with the remainder to be subsidized by HUD payments. On or about March 1, 2006, shortly after Local Law 79 became effective, Owner notified the tenants of its building that it would avail itself of federal opt-out provisions and would not renew its section 8 contract upon expiration on March 31, 2007. The tenants formed the Mother Zion Tenant Association (Tenant Association), which notified Owner and HPD that the tenants wished to invoke the right of first opportunity set forth in Local Law 79. However, HPD and Owner took the position that Local Law 79 is preempted by federal and state laws. Petitioners then commenced this proceeding to, inter alia, declare that Owner is subject to Local Law 79.

By operation of the Supremacy Clause of article VI of the US Constitution, federal law can supersede state or local laws (*Hillsborough County v Automated Medical Laboratories, Inc.*, 471 US 707, 712-713 [1985]). Congressional intent to preempt state or local law may be evinced (1) by express language in a federal statute, (2) implicitly, where the federal legislation is so comprehensive in scope that it fully occupies the field of its subject matter jurisdiction (field preemption), or (3) implicitly, where the state or local law actually conflicts with the federal law (conflict preemption) (*see id* at 713; *Drattel v Toyota Motor Corp.*, 92 NY2d 35, 42-43 [1998]). An actual conflict arises when either compliance with both federal and local laws is physically impossible or when the local law stands as an obstacle to the accomplishment of the full congressional purposes and objectives (*Hillsborough County*, 471 US at 713; *Guice v Charles Schwab & Co.*, 89 NY2d 31, 39 [1996], *cert denied* 520 US 1118 [1997]).

The fact that Local Law 79 and the federal laws pertaining to section 8 have as their general aim the provision of affordable

housing for low-income people does not, as petitioners suggest, resolve the preemption question (*see Forest Park II*, 336 F3d at 732). Similarly, the historical exercise of state and local powers to regulate housing is not dispositive on the issue of actual conflict. Local Law 79, which requires owners to either remain in section 8 or sell their property to the tenants at a rate set by a panel of appraisers, actually conflicts with the federal regime of an entirely voluntary program with inducements to encourage owners to remain in section 8 (*see id.* at 731-734).* Indeed, Local Law 79 was enacted, in part, with the aim of nullifying the federal provision allowing for an owner's voluntary withdrawal. Petitioners' characterization of the Local Law as affording "additional protections" does not disguise that actual conflict with the federal laws. The City Council could enact safeguards not inconsistent with the federal laws; for example, supplemental vouchers or tax breaks to make remaining in the program even more enticing than the federal inducements would certainly be permissible. However, converting a voluntary federal program into a mandatory one would frustrate congressional objectives (*id.* at 733-734 ["Any state statute that forces owners to remain in a federally subsidized program from which Congress has authorized withdrawal would eviscerate the method Congress chose to implement the federal low-income housing scheme"]). In fact, Local Law 79 would have the effect of discouraging owners from embarking on new section 8 housing developments, which would also run afoul of congressional goals.

The fact that Local Law 79 offers owners a choice between remaining in section 8 and selling to the tenants does not, as petitioners contend, render the local provision noncompulsory. Under that law, owners are divested of all other options, including maintaining the building as a market rent property; furthermore, the tenants' purchase price is artificially set by a panel of appraisers.

Petitioners' cases do not warrant a finding that Local Law 79 is consistent with federal law. In *Rosario v Diagonal Realty, LLC* (8 NY3d 755, 764 [2007], *cert denied* 552 US —, 128 S Ct 1069 [2008]), the Court of Appeals held that Congress's repeal of the "endless lease" provision of section 8 did not preempt application of state rent regulation laws of general applicability requiring owners to renew stabilized leases on the same terms as the expiring contracts, because legislative and regulatory

---

* The parties agree that the express preemption provision of the Low-Income Housing Preservation and Resident Homeownership Act (LIHPRHA) (12 USC § 4101 *et seq.*) does not apply here.

language expressly contemplated that state and local laws would continue such protections. At issue in *Topa Equities, Ltd. v City of Los Angeles* (342 F3d 1065 [9th Cir 2003]) was a local rent regulation law applicable to all apartment owners, not just owners who opted out of federal programs. Petitioners' state court cases involved antidiscrimination laws (*see Commission on Human Rights & Opportunities v Sullivan Assoc.*, 250 Conn 763, 739 A2d 238 [1999]; *Attorney Gen. v Brown*, 400 Mass 826, 511 NE2d 1103 [1987]; *Franklin Tower One, L.L.C. v N.M.*, 157 NJ 602, 725 A2d 1104 [1999]). To the extent *Kenneth Arms Tenant Assn. v Martinez* (2001 US Dist LEXIS 11470 [ED Cal 2001]) can be read as conferring on states an unfettered ability to impose restrictions greater than those imposed by federal law, we decline to follow it and find the Eighth Circuit's reasoning in *Forest Park II* (336 F3d 724 [2003]) more persuasive. Concur—Saxe, J.P., Nardelli, Buckley and Catterson, JJ. [*See* 2007 NY Slip Op 30851(U).]